STATE ex rel. ESIDOR LABOVICH and Another v.
GEORGE T. REDINGTON.[1]

November 22, 1912.

Nos. 17,923—(71).

**City charter — regulation of shows.**

> Under the charter of the city of St. Paul, the power to license and regulate
> the exhibition of shows of all kinds, including theaters and moving picture
> shows, is with the common council, is a legislative power, and cannot be
> delegated to the city clerk.

**Same — construction of ordinances.**

> Certain ordinances passed by the common council considered, and *held* not
> to be an exercise of its legislative or discretionary power to license and
> regulate all shows and theaters, and that the council still retained the
> power to license and regulate such shows and theaters, including the power
> to grant or refuse a license in a particular case.

. The district court for Ramsey county issued its alternative writ
of mandamus requiring George T. Redington, as city clerk of the
city of St. Paul, to issue to petitioners a license in the usual form,
authorizing them to use their building as a theater for the conduct
of a moving picture show, or show cause why he had not done so.
Upon the petition for the writ and answer, the truth of the allega-
tions of which was admitted by the respective parties, the relators
moved for a peremptory writ and the respondent moved to quash the
writ. The peremptory writ was denied and the alternative writ was
quashed, Hallam, J. From the order denying the peremptory writ
and quashing the alternative writ, relators appealed. Affirmed.

*James E. Markham* and *Benjamin Calmenson,* for appellant.

*O. H. O'Neill* and *J. P. Kyle,* for respondent.

BUNN, J.

Relators petitioned the district court for Ramsey county to grant

[1] Reported in 138 N. W. 430.

a writ of mandamus requiring respondent, as city clerk of the city of St. Paul, to issue to them a license authorizing them to use a building which they owned as a theater for the conduct of moving picture shows. An alternative writ was issued on the petition, and respondent answered. On the petition, writ and answer, relators moved for a peremptory writ, and respondent moved to quash the alternative writ. The trial court denied the relators' motion, and granted the motion to quash. Relators appealed from this order.

The facts, as disclosed by the petition and answer, are as follows:

Relators are the owners of a lot on Selby avenue in St. Paul, on which they erected a brick building and equipped the same with the necessary seats and other furniture for use as a place of public entertainment, intending to present therein a series of moving pictures, "descriptive of interesting events and scenes, pictures that are instructive, educational and interesting," and to charge an admission fee to such entertainments. The plans and specifications for the building were submitted to the building inspector of St. Paul before its construction, and he approved the same, and issued to relators a building permit. Relators expended more than $7,000 in the construction and furnishing of the building.

An ordinance of the city of St. Paul provides that it shall be unlawful for any person or persons to exhibit any show or shows * * * or to perform any * * * theatrical or other performances or exhibitions whatever, for which pay is required, demanded or received, without having been previously licensed so to do by authority of the common council of the city; "provided, however, that the common council may, by resolution adopted by a two-thirds vote of all members elect, from time to time authorize such sum as they may deem proper to be received as an annual license from the opera house or any other hall devoted exclusively to public exhibitions." It is made the duty of every person desirous of exhibiting shows for pay to "make application to the mayor or common council of the city of St. Paul, or to the clerk, for a license, and the said license may be granted by the mayor, common council, or by the city clerk, for any concert or theatrical exhibition." It is further provided by this

ordinance that the city authorities may grant a license in the manner above provided to "exhibit any show or shows, caravan or circus, to wit: Provided, whenever any person or persons are desirous of exhibiting any show or performance aforesaid before the meeting of the common council, the mayor or city clerk may grant such license until the next meeting of the common council."

Another ordinance fixes the amount of the license fee for circuses, traveling menageries, merry-go-rounds, shooting galleries and theaters. It provides that "all theaters shall pay a license fee of one hundred dollars ($100)."

In March, 1912, relators applied to the common council for a license to operate a moving picture show in their building. A resolution was introduced in the assembly fixing the license fee at $50, and directing the city clerk to issue the license to relators. This resolution was defeated. The building was located within a block of a public school, and opposition to the granting of a license came from parents of school children, teachers and the school board. In June, 1912, relators made a second application for a license to the common council, and a resolution was introduced granting the application on condition that no moving pictures should be displayed during school hours, or while children are on their way to or from school. This resolution met opposition from the same sources and was voted down. Thereafter relators applied to respondent as city clerk to issue the license, and tendered to the city treasurer the sum of $100, the amount fixed by the ordinance before referred to as the license fee for theaters. The city clerk refused to issue the license. The petition charges that such refusal was arbitrary and without cause, but the answer alleged that the city clerk knew of the two previous applications to the council, the proceedings in relation thereto, and of the opposition which there was to the granting of such license. The answer also alleged that relators, before constructing the building, were well aware of the opposition, and that at the time of the first refusal of a license by the council, not much more than the foundation of the building had been completed.

Were the relators, on the above facts, entitled to a peremptory writ of mandamus requiring the city clerk to issue the license?

It is the position of the relators, in brief, that by the ordinances referred to the common council had directed the issuance of a license to any theater, including moving picture shows, on payment of an annual fee of $100, and that the city clerk, or the council itself, had no discretion to refuse a license to any such theater or show, no matter what its character or where located. In other words, the claim is that the council had directed the issuance of a license to relators, had exhausted its discretionary powers, and that nothing remained for the clerk except the ministerial or clerical duty of making out, executing and delivering the document constituting the license. Relators are forced to take this position, because it is conceded, as it must be, that the council could not delegate to the city clerk the legislative duty or discretion to determine whether in a particular case a license should be issued. The city charter gives the council the power "to license and regulate the exhibition of common showmen and shows of all kinds, and the exhibition of caravans, concerts and theatrical performances." There is no authority to license or regulate such shows in any other person or body. And clearly the council could not delegate such authority to the city clerk. Darling v. City of St. Paul, 19 Minn. 336 (389). Therefore, if the ordinances may be construed as delegating to the clerk or mayor any power to determine whether in a particular case a license should be issued, they are to that extent void.

The whole question then is this: Did the council, by the ordinances quoted, direct the clerk to issue a license to each and every theater and show upon payment of the license fee of $100, no matter what might be its character or location? Had the council, in other words, exercised its legislative or discretionary power in the matter, so that such power was exhausted? If it had not, if it still possessed the power to control and regulate such shows, and to grant or refuse a license in a particular case, clearly this writ was properly quashed.

A careful reading of the ordinances referred to in connection with the charter provision giving the common council power to license and regulate shows of all kinds, leads to the conclusion that the council

had never passed an ordinance which can be fairly construed into the grant of a license to theaters or shows in general, no matter what their character or in what part of the city they might be located. The proviso that the common council may from time to time "authorize such sum as they may deem proper to be received as an annual license from the opera house, or any other hall devoted exclusively to public exhibition," followed by the ordinance fixing the license fee for theaters at $100, can be construed only as fixing the amount of the license fee, and not as granting authority to every person desiring to maintain such a hall for public exhibition to do so upon payment of such fee. There is much more in the power to "license and regulate" than the mere fixing of the amount of the license fee. It is not to be doubted that, under this power, the council could prohibit improper exhibitions, or exhibitions in portions of the city in which for reasons of the public welfare it was undesirable to have such exhibitions. The power given by the charter is to regulate, as well as to license. This clearly includes the power to prohibit. State v. District Court of Ramsey County, 114 Minn. 287, 131 N. W. 327.

Nor can we hold that the ordinance providing that licenses may be granted by the "mayor, common council, or by the city clerk" is an exercise by the council of its power to license and regulate. If this is to be construed as a delegation to the mayor or clerk of the legislative and discretionary power of the council to license and regulate, the provision is clearly void, as before stated. But the fair construction of this ordinance, construed as a whole, is that the mayor or clerk may grant a license until the next meeting of the council. It should not be construed either as delegating legislative authority to the mayor or clerk, or as determining that all "shows or theatrical exhibitions" were authorized to be given, upon payment of the license fee, and the ministerial act of issuing the license. The council might, perhaps, by a general ordinance defining the character of the shows permitted to be given, fixing the limits within which they might be exhibited, and other conditions, fully exercise its power and discretion, and leave the mere issuance of the license a purely ministerial duty intrusted to the clerk. But we think it has not attempted to do this. It has still retained the power to refuse a license in a

particular case, where by reason of the character of the exhibition, or the proposed location, it is deemed contrary to public welfare to grant it. We are not concerned here with the question of the wisdom of the council's action in giving heed to the protests against moving picture shows in the vicinity of a public school, or with the question of the influence of such exhibitions upon children. Relators are not complaining of the action of the council. Their claim is that the council had no power to act, because such power had been exhausted by the passage of the ordinances we have considered. We do not sustain this claim.

Order affirmed.