THE STATE OF MONTANA, on the Relation of LARRY O. BENNETT and ALMA L. BENNETT, Relators, *v.* EDWARD L. STOW, as Sanitarian of the Health Department of the City of Billings, Montana, a municipal corporation, MAYOR WILLARD FRASER, Councilmen HOWARD E. HULTGREN, JAMES B. PATTEN, CHARLES H. GLENN, ALVIN G. WENDTE, HARRY E. BIDDINGER, DUANE E. SMITH, WAYNE H. CHESTNUT, HENRY S. COX, WILLIAM E. JULL and JOSEPH A. LEONE, composing the City Council of the City of Billings, Respondents.

No. 10882

Submitted December 7, 1964. Decided February 26, 1965.

399 P.2d 221.

600

Longan & Holmstrom, Billings, Franklin Longan (argued), Billings, for relators.

James Thompson, City. Atty. (argued), Billings, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding filed in this court on November 9, 1964, wherein relators seek a writ of mandate to compel the issuance of a license for the operation of a trailer park in the City of Billings, Montana. Following ex parte presentation this court issued an order to show cause.

It appeared from the petition, that for some time before the year 1963, relators were the owners of a tract of land outside

the city limits of Billings, Montana; that in the Fall of 1963, the relators undertook construction of a trailer park upon their property, contract between them and a construction company was entered into on August 21, 1963, and on October 3, 1963, actual work commenced thereon and excavations for streets, sewer and water lines, were undertaken and by November 19, 1963, a total expenditure of $19,538.85 had been made by relators for labor, equipment rental and materials; and that on November 19, 1963, the tract was annexed into the City of Billings by resolution passed by the council and approved by the mayor. On December 2, 1963, the contractor applied for a building permit from the City and it was refused. On January 7, 1964, an ordinance was passed by the city council and approved by the mayor zoning the tract so that the construction and operation of a trailer court would not be permitted; that the relators proceeded with the construction and completed the trailer park shortly before August 21, 1964, at a cost of $234,500.00, exclusive of the value of the land; that there existed an ordinance, enacted on July 24, 1956, of the City of Billings providing for the construction and operation of trailer parks and set uniform standards for such industry and provided for the issuance of licenses, applications therefor to be filed with the health department; and that on August 21, 1964, relators made application in writing on forms furnished by the respondent sanitarian of the health department, submitted the license fee and requested such health officer to make the inspections required by the ordinance and approve the application and cause the license to be issued.

On September 11, 1964, the sanitarian reported by letter to the chairman and members of the mayor's special trailer court committee as follows:

"On September 10, 1964, an inspection was made of the Bennett Trailer Court, located at 14th and Lewis Avenue by James Neely and me. This Court is owned by Mr. Larry O. and Mrs. Alma L. Bennett and is managed by Mr. C. O. Christensen.

"This Court has eighty-nine well defined trailer spaces and from all visual appearances, has conformed to the State Trailer Court Regulations as well as the City Trailer Ordinance.

"Because this Court is going to accommodate only trailers which have independent sanitary toilets, baths and lavatories, it is the opinion of the inspecting Sanitarians that the service building is adequate.

"No inspection was made at this time of the pool facilities because the structure was not completed. But, the State Board of Health Regulations require that it be approved before use.

"If all plumbing was installed according to plans and specifications, it complies with the Billings Plumbing Code.

"At the time of inspection, no provisions were made for refuse storage and removal. Therefore, we recommend that the Court Manager and the Billings Sanitation Superintendent, devise methods and means for this disposal as prescribed by City Ordinance."

The petition further stated that as to that portion of the report concerning the disposal of refuse it was satisfactorily worked out with the superintendent of garbage disposal and such advice was transmitted to the sanitarian by letter of September 15, 1964, which reads:

"This is to advise you that I have discussed with Mr. and Mrs. Larry O. Bennett arrangements for refuse storage and removal at the trailer court which they are constructing between 14th and 15th Streets on Lewis Avenue. As a result of our conference we have reached an understanding for the storage and removal of the refuse which is satisfactory to my department."

That no license was issued, though during 1964 twelve trailer park licenses were issued within the City of Billings; that relators applied to the Montana State Board of Health for a license for the operation of the trailer park and such license was issued on September 16, 1964, and that the respondent sanitarian approved the issuance of such license by endorsing

his approval thereof; that the relators have complied with all state and city regulations, laws and ordinances with respect to the trailer park and that the refusal of the respondent sanitarian to issue or cause to be issued the trailer park license is arbitrary and the relators have no plain, speedy or adequate remedy at law.

Following ex parte presentation of the petition this court issued an order to show cause which provided in part:

"Upon ex parte application for a writ of mandate to compel the respondent, Sanitarian of the City of Billings, to issue a license to relators for the operation of a trailer park, the following matters were alleged and made to appear:

"A. Relator has made application for a license under the City of Billings ordinances.

"B. Relator has met all the requirements of the State Board of Health regulations and of the statutes of the State of Montana and has been issued a state license.

"C. Relator has complied with all city ordinances with regard to plans and specifications, health, morals and public welfare.

"D. That, even though relator has complied with all state and municipal requirements, the City of Billings, through its officers, respondents above and its mayor and council has illegally refused to issue a license.

"In view of the circumstances apparent, it is hereby ordered that Mayor Willard E. Fraser, Councilmen Howard E. Hultgren, James B. Patten, Charles H. Glenn, Alvin G. Wendte, Harry E. Biddinger, Duane E. Smith, Wayne H. Chestnut, Henry S. Cox, William E. Jull and Joseph A. Leone, composing the City Council of the City of Billings and its Mayor, be, and they are hereby joined as parties respondent.

"Now, therefore, this orders that respondents, Edward L. Stow, as Sanitarian of the Health Department of the City of Billings, and Mayor Willard E. Fraser, Councilmen [naming them] composing the City Council of the City of Billings and

its Mayor, issue the said Trailer Park license as applied for, or appear and show cause before this court on the 7th day of December, 1964, at the hour of 10:00 A.M. why the license has not been issued and why a writ of mandate as applied for should not issue. If such appearance or appearances be made, the return or returns by the above-named officials of the City of Billings shall specify with particularity the exact failure of compliance, if any, by relators with the ordinance or ordinances involved."

Pursuant to said order to show cause, respondents on December 4, 1964, filed their return on order to show cause which contained, as an exhibit, responsive answers to the allegations of the petition which, so far as the allegations of the petition above recited are concerned, denies that respondent Stow as sanitarian is the city health officer; alleged that no power to issue or cause to be issued any license had been delegated to Stow and that the city council has power to grant or refuse to grant any city license; that the relators built their trailer park with full knowledge that the city council wes reserving to itself the right and power to make a determination pursuant to section 11-904, R.C.M.1947, whether a license should be granted or denied and that relators had full knowledge of such position; that a special committee had held hearings with regard to the license and made a written report on September 23, 1964, a copy of which was served upon relators and their counsel and notice given that it would be presented to the city council on September 28, 1964; that at such city council meeting such report was approved and the council ordered that the application for license be refused on the ground that the council *deemed it best in the public interests to refuse to issue it.*

While there are many other allegations contained in the petition and return the foregoing is sufficient at this time to illustrate the situation which prevailed. It is undisputed that a class action was filed by a taxpayer and property owner against relators in the district court of Yellowstone County

seeking to enjoin relators from constructing the trailer park. This action was tried in the summer of 1964 and resulted in a judgment dated August 17, 1964, denying the injunction and dismissing the action. At the time of the action by the council refusing the license on September 28, 1964, it was the position of the City that since it was not a party to this class action it was not bound by the findings or judgment therein.

In the order to show cause, we required that the respondent officials of the City specify with particularity the exact failure of compliance, if any, by relators with the ordinance or ordinances involved. While the author has some difficulty because this requirement has not been respected, it would appear that relators applied for a license; that they had met all requirements of the State Board of Health regulations and of the statutes of the State of Montana and had been issued a state license; and that relators have complied with all city ordinances with regard to plans and specifications, health, morals and public welfare.

That as to the sub-paragraph D in our order, which read: "That, even though relator has complied with all State and Municipal requirements, the City of Billings, through its officers, respondent above and its mayor and council, has illegally refused to issue a license," the respondents' contentions that their actions herein were not illegal, as evidenced by the adoption of the report of their special committee, is that the property in question was zoned as one-family residential by the Board of County Commissioners of Yellowstone County on December 24, 1958; that while the statutes authorizing such zoning were later held unconstitutional, numerous citizens and the school board purchased and developed property adjacent to and near the tract here in question in contemplation that it would be a normal residential type area; that relators have not platted the tract nor dedicated to the public use any portion of the tract; that the relators did not protect the original city-county master plan of 1958 and have assured residents in the

area that their property would be only used for purposes in harmony with the general character of the area; that on November 12, 1963, the city council requested relators not to use or develop their property for a trailer park; that the city council zoned the tract in a manner which would not allow the construction of a trailer park; that certain residential property owners have protested; that the expenditure in excess of $200,000 in developing the trailer park was made with knowledge of the residential character of the neighborhood, of the disapproval of the city council and in face of the statutes of this state which grant the City the power to grant or deny licenses; that the development surrounding the tract has materially and substantially increased the value thereof; that if the tract be used as a trailer park approximately 95 families will reside thereon, substantially increasing traffic, population density and possibly the trailer park would deteriorate into a transient type property harboring undesirable residents; that relators did not appear before the city council for the purpose of having the use of the tract approved in advance of construction; that there are many other locations available and the trailer park could have been easily located some place else; the number of family units will increase the need for police and fire protection and congest traffic; failure to dedicate streets and alleys in the tract will impair police and fire protection; that the transient nature of the owners of the trailer units would render the population of the tract unstable; that in reliance on the master plan of 1958, ten residences have been constructed within 600 feet of the tract; that the city-county planning board advised the City to vigorously oppose the construction of the trailer park; and that the City is not bound by the findings or judgment in the class action.

Examining the records before us as to the actions of the city council it appears that on October 22, 1963, Resolution 9873 was passed and approved, which provided in relevant part:

"NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF BILLINGS, MONTANA:

"Section 1: That the boundaries of the City of Billings, Montana, be extended to include the unplatted tract of land bounded on the north by Certificate of Survey 469, on the west by Westview Subdivision, on the south by Westview Subdivision and Norman Park Subdivision, and on the east by the Lewis and Clark Jr. High School property, in the City of Billings, Yellowstone County, Montana.

"Section 2: That the Clerk give and publish notice as provided by law."

Then on November 12, 1963, at a time when the tract was not within the city limits, it passed Resolution No. 9881, which reads:

"A RESOLUTION APPEALING TO LARRY O. BENNETT AND ALMA L. BENNETT NOT TO USE THEIR PROPERTY CONSISTING OF APPROXIMATELY 10 ACRES, ADJACENT TO THE WEST OF THE LEWIS AND CLARK JUNIOR HIGH SCHOOL PROPERTY, FOR A MOBILE HOME COURT, TRAILER COURT OR TRAILER PARK.

"WHEREAS, a petition by approximately 370 residents in the vicinity adjacent to the above-described property has been submitted to the City Council requesting that said property be developed and used for a purpose that will not be detrimental to the surrounding area, and

"WHEREAS, in the judgment of the City Council and in the best interests of the inhabitants surrounding the area, this property should not be used for the purpose of maintaining mobile home court, trailer court or trailer park,

"NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF BILLINGS, MONTANA,

"That an appeal is hereby made to the said owners of the land not to use said property for mobile home court, trailer court or trailer park.

"Passed by the City Council and approved by the Mayor this 12th day of November, 1963."

The clear wording of the title and body of this Resolution is one of appeal to the relators, and evidences the fact to be that at the time of the passage and approval thereof the city council and mayor of the City of Billings knew they had no legal jurisdiction over the tract. As heretofore pointed out, prior to this date the contract for construction had been entered into and actual work had commenced.

On November 19, 1963, Resolution 9884 was passed and approved, which reads:

"A RESOLUTION EXPRESSING THE INTENTION OF THE CITY COUNCIL OF THE CITY OF BILLINGS, MONTANA, WITH RESPECT TO ZONING A TRACT OF LAND CONTAINING APPROXIMATELY TEN (10) ACRES, ADJACENT TO THE WEST OF THE LEWIS AND CLARK JUNIOR HIGH SCHOOL PROPERTY IN THE CITY OF BILLINGS, MONTANA.

"BE IT RESOLVED that it is the present intention of the City Council to establish the Zoning Districts as provided below as soon as adherence to required procedures will permit:

"That the unplatted tract of land which is bounded on the north by Certificate of Survey No. 469, on the west by Westview Subdivision, on the south by Westview Subdivision and Norman Park Subdivision, and on the east by Lewis and Clark Jr. High School property in the City of Billings, Montana, be zoned as follows:

"1. That the north portion of this tract lying between the extension of Burlington Avenue and Grand Avenue between 14th and the extension of 15th Street West, be zoned 'Commercial Limited' zone.

"2. That the portion of the tract lying between the extension of Burlington Avenue from 15th Street extended to 14th Street extended and the alley between Burlington and Lewis Avenue, be zoned 'Residential Professional' zone.

"That that portion of the tract lying south of the extension of the alley between Burlington and Lewis Avenue and Lewis Avenue, the southerly portion of the tract, be zoned 'Residential-Two' zone.

"BE IT FURTHER RESOLVED, that the Zoning Commission of the City of Billings be requested to immediately initiate and continuously prosecute procedures leading to its recommendation as to the appropriate zoning district or districts to which the aforesaid lands should be subjected.

"BE IT FURTHER RESOLVED, that the City Building Inspector be directed not to issue any permits for construction of any building in the aforesaid area contrary to the intentions expressed in this resolution."

It was on December 2, 1963, that the relators made application for a building permit to construct the trailer park on the tract and it was refused on December 2, 1963.

As to compliance with the city ordinances, relators alleged in their petition that respondent Stow was the sanitarian, frequently called the health officer in charge of the health department, and that such health department under the ordinances was entrusted with the regulation, control or supervision of all matters pertaining to the general health of the citizens of the City, among which matters was the power to approve applications for licenses to operate trailer parks. Further, that the ordinances pertaining to the licensing power of respondent Stow was alleged to be Chapter 31 of Ordinance 288, Section 2.

Section 31.1 of such Ordinance covers "Definitions" and in relevant part reads:

"For the purpose of this chapter, certain terms used herein are defined as follows:

"Health department shall be defined as such department created or established by authority of the city and entrusted with the regulation, control or supervision of all matters pertaining to the general health of the citizens of the city.

"License bureau shall be defined as such department created

or established by authority of the city and entrusted with the issuance of licenses and the collection of license fees.''

Section 31.2, ''Purpose and scope'' provides:

''The purpose of this chapter is to provide certain minimum standards, provisions, requirements and arrangements for sanitation, safety and use of materials for all auto trailer parks and auto trailers on private property.''

Section 31.3 reads:

''Applications for a permit to obtain a license; issuance of license; transfer.

''Application for a permit to obtain a license for a trailer park shall be filed with the health department. Application shall be in writing, signed by the applicant, and shall contain the following:

''(a) The name and address of the applicant.

''(b) The location and legal description of the trailer park.

''(c) The complete plan of the park showing compliance with this chapter.

''(d) Plans and specifications of all buildings and improvements constructed or to be constructed within the trailer park.

''(e) Such further information as may be required by the health department to enable it to determine if the proposed park will comply with legal requirements. The application and all accompanying plans and specifications shall be filed in triplicate. The health department, the inspector of buildings and the local enforcing agencies shall investigate the applicant and inspect the proposed plans and specifications. If the applicant is found to be of good moral character, and the proposed trailer park will be in compliance with all provisions of this chapter and all other applicable ordinances or statutes, the health department shall approve the application and upon completion of the park according to plans, shall permit the license to be issued by the proper licensing bureau. Upon application for a transfer of the license, the health department

shall issue a permit to transfer if the law enforcing agencies shall report that the transferee is of good moral character.

"(f) The fee for the license required by this section shall be in the amounts established by section 18.28 of this Code. (Ord. No. 2288.28.)"

In answer to these allegations of the relators, respondents in their responsive answer to the petition allege.

"3. Admit that respondent Stow is now, and during all times herein mentioned has been, the Sanitarian of the Health Department of the City of Billings, Montana; deny that said Sanitarian is frequently called the 'Health Officer,' and allege that Dr. O. W. Baltrusch, a licensed physician, is now, and at all times material hereto, has been the said Health Officer of said city; deny that Chapter 31, Sec. 31.1 of Ordinance No. 288, Sec. 2, as alleged in relators' petition, entrusts said Health Department with the regulation, control, or supervision of all matters pertaining to the general health of the citizens of the City of Billings, and allege that said provision of said Sec. 31.1 merely defines 'Health Department' and that therefore said section does not constitute a grant of power; deny that Sec. 31.1 grants to said Health Department the power to approve applications for licenses to operate trailer parks, allege that said section purports to grant to said Health Department the power only to approve applications for a permit to obtain a license and not the power to approve the license itself, and allege that pursuant to the statutes of the State of Montana, only the City Council of a city has the power to issue licenses, and that therefore said Chapter 31, and any other ordinance of said city, are invalid to the extent that it or they grant or might be interpreted to completely delegate such licensing power to any officer, board, or person other than said City Council, and that any purported grant of power to said Health Department to approve licenses would be an unlawful delegation of the power of the City Council of the City of Billings; admit that Sec. 31.3, as set forth in relators'

petition, is a true copy of said ordinance except for the matter omitted, such omission being indicated by ellipses at line 9 on page 3 of relators' petition, (Note: Omission supplied as quoted above.) deny that said ordinance pertains to licensing power of respondent Stow, allege that said respondent Stow has no licensing power, and allege that only respondents Hultgren, Patten, Glenn, Wendte, Biddinger, Smith, Chestnut, Cox, Jull, and Leone, when acting as the City Council of said city, have any power to grant licenses or to refuse to grant the same.''

Relators further alleged in their petition that after they had made formal application for a trailer park license and the reports had been made as hereinbefore quoted, ''that no further information was required of the relators as applicants by the respondent Health Officer, nor did the respondent make any further demands or suggestions, nor disapprove any aspect of the construction or facilities, nor recite that the construction thereof was not in the public interest, nor notify the relators that they had failed to meet any of the standards; that notwithstanding that the applicants had conformed to every legal requirement required by the ordinance, the respondent arbitrarily and without legal cause refused, and still refuses, to instruct the licensing bureau to issue a license to the relators as it is his duty to do; that the City Council has never revoked said ordinance nor amended it; that said ordinance remains in full force and effect and said delegation of authority and power to the respondent to approve application for trailer park licenses and cause them to be issued yet remains in full force and effect.''

Responding to this allegation, respondents in their responsive answer state that they ''admit that respondent Stow required no further information from relators, and that respondent Stow made no further demands or suggestions, nor disapproved any aspect of the construction or facilities, nor recite that the construction thereof was not in the public interest, nor notify relators that they had failed to meet any of the standards, and

deny that respondent Stow is the Health Officer of said City; admit that respondent Stow has failed to instruct the licensing bureau to issue a license to relators, deny that such failure was arbitrary and without legal cause, and deny that it was his duty to so instruct the licensing bureau, admit that the City Council has never revoked said ordinance nor amended it; admit that said ordinance has never been repealed, allege that said ordinance is invalid insofar as same may delegate, or may be interpreted to delegate, to respondent Stow, any authority or power to issue licenses for trailer parks, and allege that only the City Council has such authority and power.''

While many other allegations have been made on behalf of relators and respondents, we believe the foregoing will sufficiently set forth the determinative issues in this cause, and in our opinion such issues are:

1. Where a city has specifically provided the requirements and procedures for the issuance of a license by ordinances of the city, may the city council under authority of section 11-904, R.C.M.1947, which reads: ''The city or town council has power: To fix the amount, terms and manner of issuing and revoking licenses; but the council may refuse to issue licenses when it may deem it best for the public interests.'' and the police power, disregard and hold for naught such requirements and procedure in the exercise of its discretion?

2. Has the action of the city council arbitrarily discriminated against relators so as to deny them the equal protection of the laws and their privileges and immunities in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, and deprived them of the lawful use of their property in violation of section 27, Art. III, of the Constitution of Montana?

Respondents contend that the city council, having the power to refuse to issue licenses when it deems it best for the public interests, may refuse to grant one even where there is complete compliance with the provisions of the city ordinances.

They rely upon the decision of this court in State ex rel. Altop v. City of Billings, 79 Mont. 25, 255 P. 11, 54 A.L.R. 1091. So far as that case is concerned there would appear to be several distinguishing characteristics that should be considered. It was a rooming house license which was in issue and the licensing ordinance provided:

" '* * * The chief of police and the license and bond committee shall investigate the facts stated in the application, the qualifications and character of the applicant and of the individuals, officers, or trustees of the firm or corporation, and report their recommendations. The city council may demand such other and further investigation that it may deem advisable. If the city council shall determine that the applicant for such license or that the persons interested in the ownership of such rooming house or hotel are not proper persons or that such rooming house or hotel may be operated in such manner as to be a menace to the public health, peace, morals, or general welfare of the city, such application shall be denied.' "

The facts there were that Violet Altop had for a number of years conducted a rooming house in Billings under a license issued to her but such license was revoked by the action of the city council on April 1, 1924, "after notice of charges were made and served * * * duly notifying her to appear before said council and show cause why her said license theretofore issued should not be revoked." She made an application to the city council on March 3, 1925, for a license but after inspection and investigation by the city council and chief of police it was refused; again on September 15, 1925, she made another application and it was refused and she then instituted an action in mandamus to compel the City to issue the license. The answer filed by the City set forth numerous matters tending to show that relatrix was not a proper person to operate or conduct a rooming house in the City of Billings.

In its opinion this court stated:

"Counsel for the relatrix assails the validity of Ordinance

No. 995 on the ground that it reserved to the city council the right to grant or refuse a license to an applicant therefor who desires to engage in the business of conducting a rooming house, at its pleasure, and does not prescribe any uniform rule or condition which is equally applicable to all persons in like situations, and therefore admits of the opportunity for the exercise of an arbitrary discrimination. Council for defendants, on the other hand, assert that the ordinance in question does not confer upon the city council the power arbitrarily to grant or refuse such a license, but only imposes a duty upon it to be performed by an impartial exercise of a reasonable discretion. * * *

"The generally accepted rule that an ordinance which vests in public officials a discretion to grant or refuse to grant a license to carry on an ordinarily lawful business, without reference to all of the classes to which the ordinance is intended to apply, without being guided by specifically enumerated conditions to which all persons similarly situated may knowingly conform, is invalid, is subject to the qualification that, where it is impracticable to lay down a definite or all-comprehensive rule, or where the ordinance relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential to the validity of the ordinance that it prescribe all the conditions upon which such license shall be granted or refused. * * *

"When we consider the situation in which cities are placed in an effort to exercise their undoubted right under the police power to license, regulate, and control the business of conducting rooming houses within their limits, we are forced to the conclusion, under the authorities above referred to, that their ordinances enacted in that behalf come within the exception to the general rule which we have above set forth, and that it is not essential to their validity that they shall prescribe in advance all the conditions under which a license to conduct such a business shall be granted or refused. The ordinance

under consideration does not contemplate the exercise of an arbitrary power by the city council according to its whim or caprice, but does impose upon it the duty to exercise consideration and care.

"There is neither pleading nor proof in this case that the city council of Billings acted arbitrarily in refusing to grant the application of relatrix for a license."

Here, in the instant case, it is charged by the relators that the city council of Billings acted arbitrarily in refusing to grant them a license.

It should not be overlooked that the ordinance in question in Altop provided for investigation by the chief of police and the license and bond committee and that the council might demand such other and further investigation as it deemed advisable.

Also, we wish to emphasize the statement in the Altop case that an ordinance vesting a discretion to grant or refuse a license to carry on an ordinary lawful business, without being guided by specifically enumerated conditions to which all persons similarly situated may knowingly conform is invalid. This is a generally accepted rule. See 38 Am.Jur., § 337, p. 26.

Respondents also rely upon McCarten v. Sanderson, 111 Mont. 407, 109 P.2d 1108, 132 A.L.R. 1229, holding that courts cannot substitute their discretion for that of a board nor conclude that the reason moving their discretion was so lacking in substance or merit as necessarily to involve an abuse of discretion. But again, in that case it was agreed between the parties that the board did not act arbitrarily, the very charge made here by the relators.

Respondents further rely upon State ex rel. Labovich v. Redington, 119 Minn. 402, 138 N.W. 430, which involves the issuance of a theatre license which had been denied by the city council because it was too near a school, and after protests by teachers, parents and the school board. Under the city charter which gave the council power to license and reg-

ulate theatres, the court held that the action of the council was proper. The whole question was whether or not the city council by the ordinances it had adopted directed the city clerk to issue a license to each and every theatre upon payment of the license fee, no matter what might be its character or location. The court put the question another way, had the council exercised its legislative or discretionary powers in the matter, so that such power was exhausted? If it had not, if it still possessed the power to control and regulate such shows, and to grant or refuse a license in a particular case, then relator was properly denied the license. After reviewing the various ordinances, the court came to the conclusion that the council had never passed an ordinance which could be fairly construed into the grant of a license to theatres or shows in general, no matter what their character, or in what part of the city they might be located.

In this matter we have a different situation. Here the City has enacted an ordinance which clearly sets forth what is required, what investigation shall be made, and by which agencies of the city, whose approval shall be had; the fee for the license; and who shall permit the license to be issued by the proper licensing bureau.

In the Labovich case, supra, the court makes this statement: "The council might, perhaps, by a general ordinance defining the character of the shows permitted to be given, fixing the limits within which they might be exhibited, and other conditions, fully exercise its powers and discretion, and leave the mere issuance of the license a purely ministerial duty intrusted to the clerk."

This indicates rather clearly that had the City adopted an ordinance such as the City of Billings has here, the ruling might have been different.

Many other cases have been cited to us by counsel, but we see no necessity to discuss them individually since they are all distinguishable from the situation here.

There exist in this matter many features which support the contention of the relators that the respondents acted arbitrarily in denying the license, however well intentioned such actions might have been, all of which appear in the statement of facts previously set forth. It is clear that the property of the relators was not within the city limits of Billings until November 19, 1963, and on that date the council by resolution expressed its intention to zone the property so that a trailer park could not be built or operated thereon and further directed that no permits for construction in that area contrary to the intentions expressed in the zoning resolution should be granted. All this before the hearings were held and the findings submitted to the council by its committee and upon which they based, they now assert, their refusal to grant the license. The decision in the class action was rendered August 14, 1964, and it was not until after this date that any hearings were called or held.

The City commenced their annexation of relators' property on October 22, 1963, and on November 12, 1963, by resolution appealed to the relators not to use their property for a mobile home court, trailer court or trailer park. This resolution is an admission that the City had no power to require relators to desist from their use of their property at that time, and such an appeal was properly the extent of its authority. It also indicates, as does the resolution of intention to annex of October 22, 1963, that the City had notice that relators were either using or about to use their property for the erection of the trailer park, and the action of the City on November 19, 1963, the date of annexation, in directing that no permit for construction should be granted would appear to be arbitrary. The same attitude continued thereafter, and respondents argue in support of their refusal to issue the license that any provision of the ordinance which might grant or might be interpreted to delegate licensing power to any officer, board or person, other than the city council, is invalid.

This presents a rather unusual situation wherein the City

on the one hand is contending it has the right to issue or refuse to issue a license under its ordinance, and on the other that portions of the same ordinance are invalid. However, in our view the matter is only of passing interest by virtue of what will be hereinafter said.

 It would appear that an administrative officer, bureau, agent or employee of the City may be invested with the power to ascertain and determine whether the qualifications, facts, or conditions comprehended in and required under the provisions of an ordinance exist, and whether the provisions of the ordinance so fixed and declared have been complied with. In our view the fact that such an ordinance does impose the duty of ascertaining facts relating to public health, safety, welfare, and so on, upon an administrative officer, bureau, agent or employee of the City cannot be said to confer legislative power upon such employees. In Montana, where members of city councils are not full-time officials, they must depend upon administrative officers, bureaus, agents and employees to do the leg-work necessary in any type of investigation and, further, we would assume that those to whom is delegated this labor would be those familiar with the business, the functions of the City with respect thereto, and the provisions of the ordinance which must be complied with.

 Since, under our law, practically the same rules of construction apply to an ordinance as apply to a statute, in line with our holdings in Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056, and Montana Milk Control Board v. Rehberg, 141 Mont. 149, 376 P.2d 508, it would appear that an ordinance is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative officer, bureau, agent or employee, and its provisions are sufficiently clear, definite, and certain to enable the employee or agency to know its rights and obligations.

Based on these considerations, the ordinance appears to be

valid, but when the city council disregards the reports and findings of its administrative officers and bases its refusal to issue the license upon matters not contained in, nor required to be observed by, the ordinance, thereby applying a different standard, so far as relators are concerned, than that applied to others engaged in the same line of business and operating under the terms and conditions of the same ordinance, a serious question presents itself.

In Montana, every person has a right to operate a business, subject to the applicable laws of the state and ordinances of the city, and of such property right he may not be deprived without due process of law as guaranteed by section 27, Article III of the Montana Constitution, and also relators are entitled to the equal protection of the laws of this state as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America.

The question then is, has the city council by its actions, arbitrarily discriminated against relators and thereby denied them this equal protection, and deprived them of the lawful use of their property?

In considering this feature, in Garden Spot Market, Inc., v. Byrne, State Board of Equalization, 141 Mont. 382, 396, 378 P.2d 220, 228, we quoted from State v. Rathbone, 110 Mont. 225, 241, 100 P.2d 86, as follows:

" 'It is conceded that the construction to be given a right guaranteed to the individual by the Constitution must always be a reasonable one. The result of the operation of the police power is necessarily in most instances an infringment of private rights, but in the exercise of such power, property and individual rights may be injured or impaired only to the extent reasonably necessary to preserve the public welfare.' "

In State v. Gateway Mortuaries, Inc., 87 Mont. 225, 239, 287 P. 156, 159, 68 A.L.R. 1512, our court said: "The police power of the state extends only to such measures as are reason-

able, and the general rule is that all police regulations must be reasonable under all circumstances.''

In addition to other matters previously discussed, the relators alleged that prior to January 7, 1964, being the date of the adoption of the zoning ordinance, they had established a nonconforming use of their property in that the work of the construction of the trailer park had been in progress for a considerable time and that therefore they were entitled to complete the construction and use the property as a trailer court. This allegation is supported by the decision in the class action, because the court there found that relators had established a non-conforming use.

The respondents do not specifically deny that expenditures were made for work on such property during October and November of 1963, but contend that if any were made they were preliminary only, and ''involved expenditures which would be made for preparing the property for any use other than agriculture.'' They further admit that the relators proceeded with the construction of the trailer court. While respondents in their responsive answer deny that the trailer park was situated outside of the city limits when the relators undertook construction of the park, as well as denying that the construction of the trailer park began in the Fall of 1963, yet from the admitted facts it is obvious that expenditures were made upon the property for some purpose other than agriculture and the application for a building permit for the construction of a trailer park and its refusal on December 2, 1963, convinces us that a trailer park was under construction before any zoning attempt was made. We do not deem it necessary to discuss the validity of the zoning procedures followed here, other than to comment that in the class action they were held not to conform to the law.

We hold that the actions of respondents endeavoring to establish new standards for the use by relators of their own private property, without due process of law, were a deprivation

of a property right guaranteed by section 27, Article III of the Montana Constitution; and the relators having complied with the provisions of the city licensing ordinance, the actions of the respondents in refusing to grant such license were not only arbitrary, but set up a standard different as to relators than was applicable to others engaged in the same business, and thereby denied to relators the equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America.

Relators seek their costs laid out and expended, as well as their attorneys' fees.

In view of our holding here, $1,250 to cover both costs and attorneys' fees are allowed relators, the same to be a charge against the City of Billings.

It is ordered that a writ of mandate issue.

MR. JUSTICES JOHN CONWAY HARRISON, DOYLE, ADAIR, and CASTLES concur.