STATE v. EMIL SCAFFER.[1]

June 30, 1905.

Nos. 14,295—(20).

**Construction of Statute.**

Statutes are to be construed in the first instance in accordance with the ordinary rules of grammar, but the grammatical sense must in all cases yield to the clearly disclosed legislative intent.

**License—Place of Amusement.**

The charter of the city of Minneapolis authorizes the city council to license and regulate "shows of all kinds, * * * circuses, concerts, * * * places of amusement and museums for which money is charged for entrance into the same." It is *held*: (a) That the clause, "for which money is charged for entrance into the same," refers to "museums" only, and does not qualify any other preceding word or subject; and (b) that the theater conducted by defendant, as stated in the opinion, comes within the class designated in the charter as "amusements," and is subject to the regulation and control of the municipal authorities, though no admission fee is charged for entrance therein.

[1] Reported in 104 N. W. 139.

Appeal by defendant from a judgment of the municipal court of Minneapolis, and from an order denying a motion for a new trial, Holt, J. Affirmed.

*Mead & Robertson,* for appellant.

The city had no authority to make the ordinance broader than the charter. The charter says: "Places of amusement and museums for which money is charged for entrance into the same." By the plain import of this language the city is allowed to charge a license for a place of amusement when the place of amusement is a business and makes a charge for admission and not otherwise. State v. Robinson, 42 Minn. 107. Thousands of dollars have been spent and are being spent every year by philanthropists, in libraries and schools to instruct mankind free of cost. Thousands have been spent in the city of Minneapolis every winter and summer to amuse the people in the form of parks, and entertainments provided therein. Swimming pools have been built; boats have been provided; music both vocal and instrumental has been furnished; plays have been enacted and operas have been presented. All this has been done by the park board of the city on exactly the same terms as this defendant furnished the same things, viz.: If you didn't wish to pay you got a poor seat, if you would pay a nominal sum you could get a good seat. All this was done by the city with the idea of furnishing to the poorer classes amusement and recreation, which, by the way, is just as necessary to man as meat, drink and clothes. This, then, having been done by the city itself with the idea that the citizens are benefited, may not defendant do likewise? Are we to make the conferring of benefits a monopoly? Are we to say that no man may amuse his fellow citizens without a license? Has it come to the point where a man may be haled into court and fined one hundred dollars because he furnished a warm room at a season of the year when the outer temperature is frigid, and furnished free amusement and a comfortable seat to persons poor and unfortunate? Can it be possible that the legislature intended such an absurd and cruel result?

Charter provisions involving imprisonment without the intervention of a jury require a strict construction. No one should be brought within the law unless within its letter. Harris v. Commonwealth, 81

Va. 240; State v. Lundie, 47 La. An. 1,596; State v. Hammond, 40 Minn. 43; Village of Fairmount v. Meyer, 83 Minn. 456; City of Red Wing v. Chicago, M. & St. P. Ry. Co., 72 Minn. 240.

*Frank Healy* and *A. C. Finney,* for respondent.

BROWN, J.

Defendant was prosecuted and convicted under an ordinance of the city of Minneapolis for the alleged offense of operating a theater without a license. Judgment was duly rendered against him, from which he appealed.

The only question presented is the validity of the ordinance under which defendant was convicted. The charter of the city of Minneapolis confers upon the city council full power and authority to make, ordain, and enforce all such ordinances for the government and good order of the city, the suppression of vice and intemperance, and the prevention of crime, as it shall deem expedient; and for such purposes the council is vested with power and authority:

> First, to license and regulate the exhibitions of common showmen and shows of all kinds and the exhibitions of caravans, menageries, circuses, concerts, roller skating rinks, places of amusement and museums for which money is charged for entrance into the same, newsboys and boot blacks and theatrical performances.

Under and pursuant to this authority, the city council duly enacted the ordinance under which defendant was prosecuted, the first section of which is as follows:

> No person, persons, company or corporation shall engage in the business of keeping, maintaining, conducting or operating any theatre or place for theatrical performances, in the city of Minneapolis, without first paying the license fee and obtaining the license therefor, as herein provided.

It appears from the record that defendant was operating in Minneapolis what is commonly known at the "Empire Theater," and so conducting it as a public resort and place of amusement. Within the building there was an auditorium and gallery for spectators and a

stage for the performers. The public was admitted to the auditorium and gallery without charge. The seats in the rear of the auditorium were free, but a uniform charge of fifteen cents was made of all persons who occupied seats either in the front, or anywhere in the gallery. There were no free seats in the gallery. Two theatrical performances were given daily, and by hired performers. It was conceded that defendant had no license to operate this theater. The theory of defendant is that, as no fee was charged for the admission of the public into the theater, it does not come within the scope or meaning of the charter authorizing the city council to enact ordinances for the purpose of such regulation.

The charter, as will be noticed, provides that the council shall have power and authority to license and regulate common showmen, all kinds of exhibitions, caravans, circuses, "places of amusement and museums for which money is charged for entrance into the same." The ordinance purports to regulate all classes of theaters or places where theatrical performances are given, whether money is charged for admission into the same or not. The point made is that the city council had no authority to enact such an ordinance; that a fair construction of the charter limits the power of the city council in the matter of regulating places of amusement to such as are operated for a pecuniary profit by a charge of an admission fee. Whether defendant is right in this contention from a strictly grammatical standpoint is not necessary to determine. Though statutes are to be construed in this first instance in accordance with the ordinary rules of grammar, the grammatical sense must in all cases yield to the clearly disclosed legislative intent. 26 Am. & Eng. Enc. (2d Ed.) 612. This is a cardinal rule of statutory construction, and applies to the provision of the charter here under consideration. It cannot be doubted that places of public amusement of the character of that operated by defendant, where large and varied elements of society congregate, as well as all places of public amusement of a similar nature, whether an admission fee is charged, or whether conducted without charge as an adjunct to or in connection with some other business enterprise, are proper subjects for police regulation and control. Indeed, the welfare of those who attend, and the good order and government of the municipality in which they are conducted, demand such control. It is manifest that the legislature

intended by the clause of the charter here under consideration to clothe the city council with authority to provide for and exercise such control; that the intention was to include all places of public amusement of a nature proper to be under police supervision; and that there was no intention to discriminate in favor of the "free show." We therefore hold that the ordinance under which defendant was prosecuted was fully authorized by the provisions of the charter.

But if we are wrong in the conclusion just reached, the authorities cited by respondent sustain the contention that the ordinance was authorized by the charter from a grammatical point of view. The contention of the city in this respect is that the clause, "for which money is charged for entrance into the same," relates to the preceding word "museums" only, and does not qualify any other preceding word or subject. The following cases bear out this contention: Fowler v. Tuttle, 24 N. H. 9; Cushing v. Worrick, 9 Gray, 383; Quinn v. Lowell, 140 Mass. 106, 3 N. E. 200. So that, if we adopt either ground, the conclusion is that the ordinance is valid.

The judgment appealed from is affirmed.