FRANKLIN THEATRE CORPORATION v.
CITY OF MINNEAPOLIS.

198 N. W. 2d 558.

June 16, 1972—No. 43293.

*Robert J. Milavetz,* for appellant.

*Keith M. Stidd,* City Attorney, and *Robert J. Alfton,* Assistant City Attorney, for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Gunn, JJ.

PER CURIAM.

Appeal from an order denying a new trial and from a declaratory judgment determining that plaintiff-appellant, Franklin Theatre Corporation, was not entitled to relief from the Minneapolis City Council's refusal to grant it a motion picture theater license.

The application for a transfer of the theater license from the theater's previous owners to plaintiff was first placed before the Licenses Committee of the Minneapolis City Council on August 12, 1970. The committee's recommendation that the transfer be denied was approved by the council on September 11, 1970.

In the interval between the license application and its denial, a member of the Minneapolis Police Department undertook an investigation of the license applicant. While discussing the license application with plaintiff's president, Edwin M. Magnuson, the investigator suggested

that a letter expressing his intent to continue the policies of the previous management might expedite consideration of the application. Pursuant to that suggestion, Magnuson sent a letter to the investigator on August 25 which stated:

"* * * I intend to run the Franklin with the same policy as the previous management." [1]

A few days later on August 31 the investigator noticed an ad in a local daily newspaper indicating that a movie which, according to police records, contained numerous sexually explicit scenes was being shown at the Franklin Theatre. Based on this information, the investigator recommended that the Licenses Committee recommend denial of the theater license application on the ground that Magnuson's letter of August 25 contained a misrepresentation with regard to his film-selection policies. The committee and the city council accepted the investigator's recommendation and the license was denied. This action followed.

A careful review of the record indicates that the license investigator had no basis for his recommendation. First, there was no evidence that the investigator could define the previous film policy or that he was familiar with film showings of the previous management. Next, the evidence shows that the investigator knew that the previous management had in May 1970 shown one sexually explicit picture, "Marriage Manual," containing numerous scenes of sexual intercourse. In addition, at least one other picture had been shown about which there had been complaints. One sexually explicit picture, "Anomalies," had been shown by plaintiff prior to the action denying the license by the city council. Two exhibits in the file are reports by members of the Minneapolis Police Department morals squad describing the two sexually explicit pictures. These reports do indicate that "Anomalies" may be more objectionable than "Marriage Manual." However, the distinction appears to be of degree rather than kind.

The basis for the decision of the trial judge was that the policy of the prior theater management was not to show sexually explicit movies;

---

[1] The full text of the letter of August 25, 1970, reads as follows: "This is to inform you that I have been employed in the Graphic Arts under the LPIU Local 229 for the past 24 years in the city of Mpls, running printing equipment for commercial shops exclusively.

"I am now the present owner of the Franklin Theatre Corporation, and the only stockholder. I intend to run the Franklin with the same policy as the previous management."

that plaintiff's president had made an untruthful and fraudulent statement in his letter to the investigator when he said that he proposed to follow the same policy as the previous management; and that the council had the right to deny a license to a fraudulent or untruthful applicant.

Defendant-respondent argues that a municipality which denies a license by reason of a fraudulent representation of a material fact is not acting arbitrarily, capriciously, or unreasonably and that "[f]raud in the licensee's application is, of course, commonly recognized as a ground for revocation." 51 Am. Jur. 2d, Licenses and Permits, § 58.

There is no question, at the outset, but that the requirement of a license as a condition precedent to the right or privilege of carrying on certain business activities or employments is a legitimate exercise of the police power. Lyons v. City of Minneapolis, 241 Minn. 439, 442, 63 N. W. 2d 585, 588 (1954).

The rule generally applicable to the judicial review of a municipality's exercise of its licensing power is summarized and discussed in City of St. Paul v. Dalsin, 245 Minn. 325, 330, 71 N. W. 2d 855, 858 (1955).

This court has had several opportunities to review controversies involving the licensing of motion picture theaters or places of amusement. See, Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967 (1921); Bainbridge v. City of Minneapolis, 131 Minn. 195, 154 N. W. 964 (1915); State ex rel. Labovich v. Redington, 119 Minn. 402, 138 N. W. 430 (1912); Higgins v. LaCroix, 119 Minn. 145, 137 N. W. 417 (1912); State v. Scaffer, 95 Minn. 311, 104 N. W. 139 (1905). None of those cases, however, involved the denial or revocation of a license because of the claim that the license application contained misrepresentations. A Minnesota case fairly close in point on this issue is In re Disbarment of William Bauer, 167 Minn. 350, 209 N. W. 31 (1926). In that case it was found that Bauer had misrepresented his true name and his criminal background in his application for admission to the bar. In addition, he had been guilty of a number of other indiscretions. In ordering his disbarment, this court indicated that the misrepresentations in the application would alone justify the disbarment. And, as we have pointed out, 51 Am. Jur. 2d, Licenses and Permits, § 58, indicates that fraud in the licensee's application is a generally recognized ground for revocation of a license. An extensive analysis with citations relevant to this topic can be found in Annotation, 165 A. L. R. 1138.

Recent cases which set forth the requisite elements of an action for fraud in this state are Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. 2d 37 (1967); Sawyer v. Tildahl, 275 Minn. 457, 460, 148 N. W. 2d

131, 133 (1967); Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 228, 130 N. W. 2d 534, 539 (1964). However, we cannot overlook the following fundamental principle: "It is axiomatic that fraud cannot be predicated on the truth. A true representation is not actionable." Rien, Trustee, v. Cooper, 211 Minn. 517, 523, 1 N. W. 2d 847, 851 (1942). The Rien opinion also discusses the requirement that the falsehood must be one that is "material" before an action for fraud or misrepresentation may be sustained.

In our examination of the record, we find no misrepresentation, material or otherwise, and, therefore, no basis for affirmance of the decisions of the city council and the trial court.

Because of the result reached on this appeal, we do not consider other issues raised by plaintiff.

Reversed.