Arnie KJARSTAD, Appellant,

v.

STATE of Alaska, Alaska Commercial Fisheries Entry Commission, Richard Listowski, Phillip Smith and Bruce Twomley, Commissioners of the Alaska Commercial Fisheries Entry Commission, Appellees.

No. S–198.

Supreme Court of Alaska.

Aug. 9, 1985.

Pamela L. Finley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Madeleine R. Levy, Asst. Atty. Gen., Anchorage, Margot O. Knuth, Asst. Attys. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The Alaska Commercial Fisheries Entry Commission (CFEC or Commission) revoked Arnie Kjarstad's Southeastern Alaska herring purse seine entry permit pursuant to AS 16.43.960 (formerly AS 16.43.-355). Revocation was based on a finding that Kjarstad had knowingly submitted false information relating to domicile on his application for the limited entry permit.

Kjarstad contends that AS 16.43.960 was applied in violation of statutory and constitutional prohibitions against retroactive and *ex post facto* laws. Kjarstad also argues that even if the statute is applicable, revocation of his permit was improper because he did not violate its terms. We reverse on the ground that Kjarstad did not, within the meaning of AS 16.43.960, submit false information in connection with his application.

## BACKGROUND

The CFEC began accepting Southeast herring permit applications in February, 1977. Kjarstad applied for his permit one month later.

The application process for Southeast permits is governed by the Limited Entry Fishing Act, AS 16.43.010–.990, which directs the Commission to issue permits only to qualified applicants. Applicants qualify under a point system designed to measure the degree of hardship they would suffer if excluded from the fishery. One factor used to allocate points is the "availability of alternative occupations." AS 16.43.-250(a)(1); 20 AAC 05.620(3). The point system assumes that applicants who live in less populated areas have fewer alternative occupations available to them than applicants from larger cities.[1]

---

1. In *Deubelbeiss v. CFEC,* 689 P.2d 487 (Alaska 1984) we held that the CFEC's alternative occu- pational point scheme, as set forth in 20 AAC 05.630(b)(4), violated the equal protection

Six points were needed to qualify for a Southeast herring permit. Kjarstad received the sixth point for "availability of alternative occupations" by listing Ketchikan, Alaska as his domicile on his permit application.

Kjarstad's application was sent to him with his pre-printed Mt. Vernon, Washington mailing address on it. The instructions explained the "availability of alternative occupations" factor as follows:

> If your permanent home (domicile) on December 31, 1976 was in Alaska or Washington, consult the maps on the next two pages to see if you qualify for zero or one point ... Complete the reverse side of the application.

All of Alaska, except Anchorage and Fairbanks, qualified for one point. Mt. Vernon, Washington did not.

The instructions also stated:

> REQUIRED EVIDENCE FOR PROOF OF DOMICILE (YOUR PERMANENT HOME) on December 31, 1976 must be submitted unless points are pre-printed to claim it. Submit at least three kinds of evidence for proof of domicile as follows:
> a. Voter registration
> b. Driver's license
> c. Bank statements from local bank
> d. Local union or trade receipts for dues paid
> e. Charge card receipt
> f. Rent, mortgage, property tax or telephone or other utility receipt from the nonfishing portion of the year
> g. School registration
> h. Local fraternal organization receipt for dues paid
> i. An affidavit *
> Additional evidence may be required if the evidence submitted is not sufficient.

---

* An affidavit is a sworn statement. If you have no records to show where you lived on December 31, 1976 you should submit affidavits from other local people indicating your residence on this date.

The form instructed applicants to "claim all the additional points for which you have evidence." On the reverse side of the application was a section for certification of the applicant's domicile claim. The certification section instructed the applicant to list his address and left space for him to do so.

Kjarstad supported his claim for one point under the "availability of alternative occupations" factor by submitting an Alaskan resident certification card which he had obtained on March 11, 1977 from the Department of Labor. He also crossed out the pre-printed Washington address and wrote in a post office box address in Ketchikan, Alaska. He did not fill out the domicile certification section on the reverse side of the application.

The CFEC approved Kjarstad's application in March, 1978. Subsequently, the CFEC initiated fraud investigations of entry permit applications, in the course of which it reviewed Kjarstad's domicile claim. The Commission discovered that Kjarstad had claimed Washington residency from 1976 through 1979 and had applied for a Washington resident fishing license in April, 1978. The Commission found no evidence that Kjarstad had attempted to correct his claim of Ketchikan domicile made on his herring permit application. In August, 1979, the CFEC issued Kjarstad a notice to show cause why his permit should not be revoked under AS 16.43.960(a). This statute provides in pertinent part:

> The Commission may revoke an entry permit ... if a person knowingly supplies, assists in supplying, or fails to correct false information provided to the commission for the purpose of
> (1) permit application; ...

A revocation hearing was held and Kjarstad asserted that he moved to Ketchikan in the spring of 1976 and considered it his home. After hearing Kjarstad's testimony

---

clause of the Alaska Constitution. Since the revocation of Kjarstad's entry permit took place prior to our decision in *Deubelbeiss,* we disregard the constitutional infirmity of the point scheme in this case.

and considering a variety of documentary evidence, the hearing officer concluded that the information Kjarstad supplied to the Commission on the permit application form, "while incomplete at best," was not false.[2] He also found that the Commission had failed to show that Kjarstad had knowingly failed to correct false information in his permit application. However, the hearing officer found that, since the application was incomplete, the Commission's issuance of a permit to Kjarstad was "administrative error," and therefore recommended reducing Kjarstad's awarded points from six to five, effectively revoking his permit.

Subsequently, the CFEC voted to reject the hearing officer's recommended findings and to revoke Kjarstad's permit for failure to correct false information in his application. Specifically, the Commission found that:

> Falsification occurred through the combination of applicant Kjarstad's changing pre-printed address and claiming, on the strength of that change the point accruing to Ketchikan but not to Mount Vernon ... and, through his omitting entries in the domiciliary section of the application form, his setting the stage for commission acceptance of Ketchikan and its point entitlement.

The superior court affirmed the CFEC's decision and this appeal followed.

## RETROSPECTIVITY

Kjarstad submitted his application on March 22, 1977. It was approved on March 28, 1978. The CFEC seeks to revoke his permit under AS 16.43.960, which did not become effective until July 9, 1978. Under AS 01.10.090, "[n]o statute is retrospective unless expressly declared therein." Be-

cause AS 16.43.960 contains no express retrospectivity provision, Kjarstad claims that it cannot be applied to activity occurring before its effective date. Furthermore, Kjarstad asserts that the statute was applied in violation of state and federal constitutional prohibitions on *ex post facto* laws. Alaska Const. art. I, § 15; U.S. Const. art. I, § 10.

■ We review matters of statutory construction where the terms of the statute are not technical and do not involve agency expertise by exercising our independent judgment. *State v. Aleut Corp.*, 541 P.2d 730, 736–37 n. 15 (Alaska 1975).

■ The statutory and constitutional restrictions on retrospectivity are inapplicable to statutes that make only procedural changes in the law and do not affect substantive rights. *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 187 (Alaska 1980). The superior court held that since the CFEC had the authority at common law to revoke Kjarstad's permit prior to the enactment of AS 16.43.960, the revocation statute was merely procedural in effect and therefore could not run afoul of the prohibition regarding retrospective laws. We agree.

■ Case law from other jurisdictions consistently provides that a state has the inherent power to revoke a license upon discovery that the application contained fraudulent misrepresentations. *See e.g.*, *Franklin Theatre Corp. v. Minneapolis*, 293 Minn. 519, 198 N.W.2d 558, 560 (1972); *In re Berman*, 245 N.C. 612, 97 S.E.2d 232, 235 (1957). AS 16.43.960 merely codifies and provides standard procedures for the CFEC to follow when exercising its existing revocation power.[3] Thus we conclude

---

**2.** While the officer noted that the failure to supply complete information could be considered "indicative of misfeasance" by Kjarstad, he did not find that Kjarstad had intended to deceive the Commission. Thus the issue of whether incomplete information submitted with the intent to deceive constitutes "false information" under AS 16.43.960 is not squarely presented by this case.

**3.** AS 16.43.960 states:

> *Commission revocation of entry permits.* (a) The commission may revoke an entry permit or interim-use permit if a person knowingly supplies, assists in supplying, or fails to correct false information provided to the commission for the purpose of
> (1) permit application;
> (2) permit transfer; or
> (3) permit renewal.

that AS 16.43.960 was not applied to Kjarstad retrospectively in violation of AS 01.-10.090.[4]

## APPLICATION OF AS 16.43.960 TO KJARSTAD

### A. *Domicile*

Kjarstad claims that he was in fact domiciled in Ketchikan. Since Kjarstad's physical presence in Alaska is not disputed, the decisive issue is his subjective intent to remain in Ketchikan. *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980). Since this is a question of fact, we apply the substantial evidence standard of review. *Jager v. State*, 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

Kjarstad testified that his new domicile was established in Ketchikan in the spring of 1976. However, conduct indicative of intent regarding domicile is given greater weight than oral or written declarations. *Bialic v. Bialic*, 95 Ariz. 86, 386 P.2d 852 (1963); *In re Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932). Moreover, declarations of domicile advantageous to the declarant are to be viewed with suspicion and accorded little weight. *Elwert v.*

(b) Before revocation, the commission shall serve the permit holder personally or by certified or registered mail with a notice to show cause why the proposed action should not take place. The notice to show cause must

(1) be supported by an affidavit which may be made on information or belief setting out the facts which are the basis of the proposed action;

(2) provide for at least 30 days' notice of the place, date, and time of the hearing where the permit holder may present evidence in opposition to the proposed action; unless waived in writing by the permit holder, the hearing place shall be held within the judicial district in which the permit holder resides if the permit holder resides in the state; the hearing place shall be at the discretion of the commission for those permit holders residing outside the state;

(3) specify the statutes or regulations violated;

(4) state with particularity the action proposed to be taken;

(5) indicate that the permit holder's ability to permanently transfer the permit which is the subject of the revocation proceedings has been suspended as of the date of the notice and will continue to be suspended until the exhaustion of all administrative and judicial remedies; and

(6) provide other information the commission considers proper.

(c) A permit subject to revocation proceedings under this section may not be transferred after the date of the notice in (b) of this section pending exhaustion of all administrative and judicial remedies arising from action taken under this section.

(d) The revocation hearing shall be conducted before a quorum of commissioners and shall be presided over by a hearing officer appointed by the commission who shall rule on the presentation of evidence and other procedural matters. Within a reasonable time after the conclusion of the hearing, the hearing officer shall submit to the attending commissioners a proposed decision based on the record of the hearing and containing findings of fact, conclusions of law, and recommended action. The attending commissioners shall then review the hearing officer's proposed decision and adopt or amend or reject the contents of the proposed decision in the written decision of the commission. A copy of the commission decision shall be mailed to each party or the party's attorney by certified or registered mail.

(e) The failure of a permit holder properly serviced under (b) of this section to appear at the hearing is not grounds for setting aside any commission action taken. However, the commission may in its discretion order a continuance or second hearing.

(f) The effective date of the commission decision under this section is the date of the notice to show cause first served upon the permit holder under (b) of this section.

(g) The provisions of this section do not apply to the permit of a person who is a bona fide purchaser.

(h) Judicial review of commission determinations under this section is in accordance with AS 44.62.560—44.62.570; however, if a hearing de novo is granted under AS 44.62.-570(d), the hearing may, in the discretion of the court, be had with a jury sitting if application for the jury hearing is filed with the court no later than 10 days after service of the notice of appeal.

(i) An entry permit revoked by the commission under this section that is taken as security for a loan under AS 16.10.333 or AS 44.81.-230 shall be reassigned as provided in AS 16.10.337 or AS 44.81.250.

**4.** Kjarstad's claim that the revocation statute was applied in an *ex post facto* fashion must also fail since one of the elements of an *ex post facto* law is that it is retrospective. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

*Elwert,* 196 Or. 256, 248 P.2d 847, 854 (1952). Thus we look to Kjarstad's conduct in determining whether substantial evidence supports the Commission's determination that as of December 31, 1976, Kjarstad had not formed the intent to remain in Ketchikan indefinitely.

Kjarstad arrived in Alaska in March of 1976 and participated in the salmon and herring fisheries. He left Alaska for Puget Sound some time after October of 1976 to participate in the Washington salmon fishery. In the winter of that year he moved to San Francisco, working as a dock superintendent for a herring processor until March, 1977, when he returned to Alaska. This seasonal shift in employment repeated itself from 1976 through 1979.

After Kjarstad's initial arrival in Alaska, he maintained significant ties to the State of Washington. He was registered to vote in Washington and did not register to vote in Alaska until August of 1977. He held a Washington driver's license from 1976 to 1979 and owned an automobile in Washington. Kjarstad also owned rental property in Mt. Vernon in those years.

Of particular significance is the record's documentation of Kjarstad's fishing licenses. In Kjarstad's applications for Alaska commercial gear and vessel licenses, dated March 23, 1976 and June 29, 1976, he gave his Mt. Vernon address and indicated that he was a "non-resident." Kjarstad's Washington fishery license applications, dated April 11, 1978 and March 17, 1979, claim Washington residency.[5]

By comparison, Kjarstad's Alaska connections were more tenuous. He was present in Alaska only during the fishing season. While he claimed his only home in 1976 was in Ketchikan, there is no reference in the record to Kjarstad's use of an Alaskan mailing address prior to March of 1977. There are, however, numerous documented uses of Kjarstad's Washington address during the 1976 and early 1977 period on his tax forms, permit renewal forms and fishing license applications. Kjarstad's 1977 permit renewal cards, pre-printed with his Washington address, provided space to correct the address, but no correction was ever made. Wards Cove wrote to the CFEC asking for Kjarstad's 1977 permits to be sent to the Ketchikan office of the Alaska Department of Fish and Game, but there was no use of a Ketchikan address in this correspondence.

 The superior court, after reviewing the evidence, concluded as follows:

> [T]aken as a whole, the record substantially supports a picture of a man who maintained the intent to remain a Washington domiciliary in order to reap the benefits of that status, and decided that he had "moved" only when greater benefits were offered by the application for a southeastern herring permit.

We agree that substantial evidence supports the agency's conclusion that Kjarstad was not domiciled in Alaska. However, revocation does not automatically follow this determination. The language of AS 16.43.960 requires that Kjarstad knowingly submitted false information.

**B. *False Information***

 Since the term "false information" requires no special agency expertise to interpret its meaning, we exercise our independent judgment. *State v. Aleut Corp.,* 541 P.2d at 736–37 n. 15.

The superior court held that Kjarstad's claim for one point for domicile violated the prohibition on providing false information in AS 16.43.960, stating that "[i]f the CFEC decides ... that the status requested is not deserved, then it can be fairly stated that the claimant submitted false information to the commission."

The permit application form requested Kjarstad to supply "evidence for proof of

---

**5.** Washington resident fishing licenses saved him $1000 in fees. Subsequent to the initiation of these revocation proceedings, Kjarstad paid arrearages due on these licenses to the State of Washington for the years 1976 through 1979.

Kjarstad alleges that the Washington applications were filled out for him in his absence by his employer, Wards Cove Packing Company, which was not aware of his move to Alaska.

domicile (your permanent home) on December 31, 1976." The instructions also advised Kjarstad to "[c]laim all the additional points for which you can submit evidence." Kjarstad submitted an Alaskan residence certification card from the Department of Labor which he had obtained in March of 1977. He wrote in his post office box address in Ketchikan. He failed to fill out the domicile certification section on the reverse side of the form.

■ The information Kjarstad supplied to the CFEC was certainly not complete, but neither was it false. The CFEC has not challenged either the authenticity of Kjarstad's Department of Labor residence certification card or the existence of his Ketchikan mailing address. The Commission had the opportunity to return the obviously incomplete application to Kjarstad for completion or to simply deny him the permit. The fact that Kjarstad's permit was granted as a result of "administrative error" does not demonstrate that he violated the terms of AS 16.43.960 by claiming one point for availability of alternative occupations. In fact, Kjarstad did no more than follow the CFEC's instructions by claiming a domicile point and submitting what evidence he had regarding his Ketchikan domicile.

■ We reject the CFEC's contention that merely making a claim for points to which one is unentitled constitutes providing false information under the revocation statute. The permit application form itself encourages applicants to claim points to which they may not be entitled by instructing applicants to claim all additional points for which they have evidence. The CFEC's interpretation of "false information" in this context is not supported by case law. The

CFEC cites *United States v. Malinowski,* 347 F.Supp. 347 (E.D.Pa.1972), *aff'd* 472 F.2d 850 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973), in which the defendant was found to have supplied false information by claiming thirteen exemptions for nonexistent dependents on his employer's tax withholding certificate (W-4 form).[6] *Malinowski* and the other tax withholding cases cited by the CFEC, *United States v. Smith,* 487 F.2d 329 (9th Cir.1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974) and *United States v. Quilty,* 541 F.2d 172 (7th Cir.1976), are inapposite. In *Malinowski,* the court explained that in order for the tax withholding system to remain effective, withholding certificates had to represent the truth because the certificates went into effect "automatically." 347 F.Supp. at 352. Applications for entry permits, however, unlike tax withholding certificates, are not self-executing. If applicants had only to claim domicile points in order to receive them, *Malinowski* might be relevant. However, the CFEC verifies point claims after they are made by evaluating the evidence provided in the application. Moreover, it has the ability to request additional information and documentation concerning point claims. 20 AAC 05.650(c).[7] The overriding need to protect the tax system presented in *Malinowski,* is simply not a factor here where the CFEC had the administrative authority to investigate and verify dubious claims.

■ We conclude that Kjarstad's permit was not revocable under AS 16.43.960 because he did not supply "false information" in his application. Since the information Kjarstad supplied in his application was not false, Kjarstad did not "[fail] to correct false information" within the mean-

---

**6.** Malinowski made the false claims as a means of protesting the Vietnam war, with full knowledge that he was unentitled to the additional exemptions. 347 F.Supp. at 350.

**7.** 20 AAC 05.650(c) states:
 To use the special showing provisions in 20 AAC 05.630(a)(5) (for past participation), 20 AAC 05.630(b)(2) (for income dependence), and 20 AAC 05.630(b)(4)(D) (for availability

of alternative occupations), an applicant must claim a specific number of points and must submit documentation of the facts and circumstance surrounding the claim along with his application for an entry permit. Where necessary, the commission will request additional explanation or documentation of the facts and circumstances surrounding the claim before making its determination.

ing of the statute. While the CFEC has the inherent authority to revoke a license it has granted because of fraud in the application, it does not have the authority to revoke licenses merely because it granted them improvidently.[8]

REVERSED.

COMPTON, Justice, dissenting in part.

The question in this case is not whether Kjarstad submitted "false information." Clearly he did, a conclusion implicitly accepted by this court and then disregarded. Kjarstad was not domiciled in Alaska on December 31, 1976, although he asserted he was. His domicile address was not a post office box in Ketchikan, although he asserted it was. He submitted an Alaska resident certification card, obtained in *March 1977*, as evidence that he was entitled to such a card on *December* 31, 19*76*, which under no set of facts is supportable. Certainly this material is "information," and in the context of its intended use, it is false information.

By its summary conclusion, the court fails to provide the CFEC or others who may be affected by its decision any working definition of what is "false" or "false information," except by way of example.[1] Yet "false" has several common meanings in the law, which this court either rejects or ignores. For instance, Black's Law Dictionary 540 (5th ed. 1979), defines "false," among other things as: "assumed or designed to deceive," "deceitful," "wilfully and intentionally untrue." (citation to cases omitted). Even those not bound by

legal argot will find similar definitions in Websters Third New International Dictionary 819 (1969): "deceitful," "being other than what is purported or apparent."

The question that should be addressed should focus on Kjarstad's state of mind. Did he "knowingly" submit false information?[2] It is true that not every witness offers false information, or that those who do, knowingly do so. However, it is just as true that some witnesses do knowingly offer false information. The CFEC found Kjarstad had done so. In affirming the CFEC, the superior court concluded:

Appellant [Kjarstad] argues that he had sufficient connections with the State of Alaska in 1976 to support a reasonable belief that he was domiciled in this state. Thus, even if his actual domicile was in Washington, he was ignorant of this fact and consequently did not knowingly submit a false domicile claim.

The record provides substantial evidence, however, to support the commission's finding that Kjarstad knew (or should have known) at the time he submitted his application, that he was a Washington domiciliary and that his claim was false. Kjarstad accepted benefits of Washington residency from 1976 through 1979 including voting privileges and reduced fishing license fees. Furthermore, of the items listed in the application instructions as evidence of domicile, at least three would have supported a claim of Kjarstad's Washington domicile (i.e., voter registration, driver's license, and receipts from property expenses). *No* evidence in the record sug-

---

**8.** Because we decide that Kjarstad did not supply false information we do not reach the issue of whether he supplied it "knowingly" within the meaning of AS 16.43.960.

**1.** The court's treatment of this aspect of its decision is reminiscent of Justice Stewart's inability to define pornography: "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 803-04 (1964), (Stewart, J., concurring).

Defining "false" should not pose such an obstacle for this court.

**2.** If it is indeed correct that this court need not address whether Kjarstad "knowingly" submitted false information, since the court concludes he did not submit "false information" in the first place, it follows that the court's discussion of retrospectivity and domicile is irrelevant. If the information was not false, no one should care whether the statute is retrospective or where Kjarstad is domiciled. The exercise may be intellectually satisfying; however, the conclusions are merely dicta.

gests that any of the listed items could have supported Kjarstad's claim of Ketchikan domicile. Finally, the applicant's failure to fill in the domicile certification section of the application can be interpreted as evidence that Kjarstad was aware his claim was false and that he was reluctant to certify otherwise.

Appellant alleges nevertheless that he was convinced of his Ketchikan domicile status. Yet as fact-finder, the commission decided to reject this allegation and concluded that the applicant did know his domicile claim was false. In light of the number of factors in the record supporting this conclusion of which Kjarstad was aware (or should have been aware), this court cannot say that the commission's decision was not supported by substantial evidence.

I agree with the preceding analysis, and am not persuaded that this court's facile avoidance of the issue is supportable.