**Antril C. SUYDAM, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

**No. S–7683.**

Supreme Court of Alaska.

April 24, 1998.

Rehearing Denied June 1, 1998.

Robert L. Richmond and Debra Fitzgerald, Richmond & Quinn, Anchorage, for Appellant.

John T. Baker, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

At issue in this appeal is the decision of the Alaska Commercial Fisheries Entry Commission denying Antril C. Suydam's application for a Prince William Sound herring purse seine entry permit. Under the Alaska Limited Entry Act (Act), AS 16.43.010 *et seq.*, permit applicants are ranked under a point system according to their economic dependence upon and past participation in the fishery. *See* 20 Alaska Administrative Code (AAC) 05.600 (1997). In this case, substantial evidence supported the Commission's finding that Suydam was not domiciled in Kodiak in 1976, thus justifying its denial of his Available Alternative Occupations (AAO) point. The Commission erred, however, in denying Suydam two points for past participation in the fishery in 1976. Because Suydam was on the fishing grounds in a Herring Administrative Area with the "appropriate vessel, gear, licenses ... and with the intention of taking the herring resource," he qualified for two past participation points as defined by 20 AAC 05.664(a)(3)(B). We therefore reverse the Commission's denial of Suydam's herring purse seine entry permit application.

## II. FACTS AND PROCEEDINGS

In 1977 Suydam applied for a permit to fish the Prince William Sound herring purse seine fishery. Permits for this fishery are issued under the Alaska Limited Entry Act. *See* AS 16.43.010 *et seq.*[1] The Act establishes

1. The Act promotes "the conservation and the    sustained yield management of Alaska's fishery

a point system to rank permit applicants according to the extent of their economic dependence upon and past participation in the fishery. *See* AS 16.43.250(a); *see also* 20 AAC 05.630(a), (b) (detailing the ranking system required by AS 16.43.250(a)). In 1977 permits for the Prince William Sound fishery were issued only to those applicants who qualified for at least six out of a possible maximum eight points. *See* 20 AAC 05.666(1). Four points were available for past participation in the fishery during 1974–76; an applicant received one point for each year of participation in 1974 and 1975 and two points for participation in the fishery in 1976. *See* 20 AAC 05.664(a). An applicant could also qualify for four points for economic dependence on the fishery. Three of the four possible economic dependence points were awarded for investment in a vessel and gear by the qualification date—one point for ownership of a purse seine vessel and two points for ownership of a herring purse seine. *See* 20 AAC 05.664(b)(1). The remaining point for economic dependence on the fishery was awarded for the lack of "availability of alternative occupations" (AAO) in the applicant's locale.[2] *See* 20 AAC 05.664(b)(2).

After receiving Suydam's application, the Commission notified him that he was only eligible for five of the nine points[3] he had claimed: one point for investment in a vessel; two points for investment in a herring seine; one point for past participation in 1974; and one AAO point. Suydam requested a hearing on the Commission's failure to award him points for past participation in the fishery in 1975 and 1976. A hearing was held before hearing officer Ron Miller in November 1979.[4] Because there remained a question as to where Suydam was domiciled on the qualifying date in 1976,[5] however, the Commission did not rule on his application at that time.

In March 1983 Suydam submitted additional documentary evidence to the hearing officer regarding his domicile in December 1976. This evidence demonstrated that at all times relevant to this appeal Suydam had an Alaska driver's license, Alaska car registration, and Alaska voter registration and had been a member of the Kodiak Elks Lodge. Prior to 1972, Suydam and his family lived in a house he owned in Kodiak. In 1972 Suydam bought the first of three houses that he

resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination." AS 16.43.010(a). We have detailed the history and objectives of the limited entry program in prior cases. *See Johns v. Commercial Fisheries Entry Comm'n*, 758 P.2d 1256, 1263 (Alaska 1988); *see also Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 155–56 (Alaska 1982); *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1258–61 (Alaska 1980); *Isakson v. Rickey*, 550 P.2d 359, 360–61, 364–65 (Alaska 1976).

2. Points are awarded to those applicants who have the least opportunity to work in non-fishery-related jobs. *See Kjarstad v. State*, 703 P.2d 1167, 1168 (Alaska 1985). "The point system assumes that applicants who live in less populated areas have fewer alternative occupations available to them than [do] applicants from larger cities." *Id.* "An applicant is entitled to one point if his or her domicile is located more than 30 road miles from (i) the boundary of a 'place' with a population of 20,000 or more as of April 1, 1970, and (ii) an 'urbanized area' as of April 1, 1970." 20 AAC 05.664(b)(2)(A). "'Urbanized area' means a city of 50,000 or more and its surrounding areas...." 20 AAC 05.664(b)(2)(E).

3. Suydam mistakenly claimed two points for participation in 1975, when only one point was

available; a maximum of eight points could be claimed on the application.

4. Although the Commission originally scheduled the hearing for December 1977, Suydam requested three times that the hearing be rescheduled before it was finally held in November 1979.

5. On the same day that it conducted the hearing on Suydam's Prince William Sound permit application, the Commission conducted a second hearing to determine whether to revoke Suydam's Kodiak salmon fishery permit, based on an allegation that he had knowingly supplied false information regarding his domicile in Kodiak in December 1972 in an attempt to obtain that permit. In 1981 the Commission ruled in Suydam's favor on the 1972 domicile issue, finding that there was insufficient proof that Suydam was not domiciled in Kodiak in December 1972, the relevant date for the award of AAO points for his Kodiak salmon fishery permit. At the same time, the hearing officer offered Suydam the right to a hearing regarding his domicile in Kodiak as of December 1976, the relevant date for the award of an AAO point for the Prince William Sound fishery permit. Suydam elected to submit additional evidence on this issue, in lieu of requesting a formal hearing.

would own in the Seattle, Washington area. At that time, Suydam moved his family from Kodiak to Washington and they continued to live there after 1976.[6] Suydam's daughter attended high school in Washington from 1972 until she graduated in 1974.

Suydam contended that owning the homes in Washington did not change his domicile because he moved there to oversee construction of fishing vessels. Suydam, however, obtained Washington resident commercial fishing licenses from 1975 to 1978. His applications for these licenses stated that he had been a resident of Washington since 1973. Furthermore, Suydam deducted his apartment rent in Kodiak as a business expense on his 1976 and 1977 federal income tax returns, a deduction that would not be allowed if Kodiak were his domicile. In addition, on his Washington tax return, he deducted other property taxes and interest from the purchase of residential property in Washington that could not have properly been claimed on his Alaska tax return. Suydam also avoided paying capital gains taxes on the sale of his Washington homes by declaring the properties to be his principal places of residence.

After reviewing the recording of the hearing and the documentary record, hearing officer Frank Glass denied Suydam's Prince William Sound fishery permit application in October 1991. Glass found that Suydam was entitled to five points, one short of the number required to obtain a permit.

Glass awarded Suydam one point for past participation in the fishery in 1975, concluding that his wife's medical emergency constituted an unavoidable circumstance that excused Suydam's absence from the fishery that year. Glass, however, did not award Suydam the two past participation points for 1976. He found that Suydam was at Colum-

bia Bay while the season was closed, and that he neither fished nor intended to fish during the opening at Green Island due to a fishers' strike.[7]

Hearing officer Glass also found that Suydam was not entitled to the previously classified AAO point because Suydam was not domiciled in Kodiak on December 31, 1976, the qualifying date. Glass concluded that Suydam became domiciled in Washington after he moved his family there from Kodiak, and "Washington became the center of their domestic life."

Suydam appealed hearing officer Glass's decision to the Commission for administrative review. He claimed that the hearing officer erred in: (1) determining his domicile for purposes of the AAO point; (2) concluding that he was not entitled to receive past participation points for 1976; and (3) violating his due process rights by taking eight years to render a decision. In July 1993 the Commission denied administrative review. Suydam appealed this decision to the superior court. After briefing on the merits, the superior court affirmed the hearing officer's decision. Suydam appeals.

## III.  DISCUSSION

### A.  The Commission Did Not Err in Deciding that Suydam Is Not Entitled to One AAO Point.

Suydam argues that the Commission had the burden of proving the issue of domicile when deciding whether to revoke a previously verified AAO point. The State maintains that the Commission retained authority to modify any point classification prior to the issuance of a final decision on an individual application, which, in Suydam's case, occurred in 1993.

---

6.  In 1974 Suydam sold his Kodiak home and thereafter rented part of a house in Kodiak.

7.  It is apparent from the record that Suydam did not participate in the strike, but merely waited for it to abate so that he could fish. In an affidavit submitted to the hearing officer, Suydam explained:

> I was physically on the herring grounds for the 1976 season with my own vessel and gear. I

> was at Columbia Bay, but due to lack of herring the season was not opened. I then took in the Green Island opening, but due to the herring fisherman's strike, did not fish when it opened. After waiting another week and with a poor showing of herring reported from surveys, I decided it would not be profitable to stay and suspected that the season would not be opened at all.

1. *The Commission is authorized to modify a point classification prior to issuing a final decision.*

■ As a preliminary matter, Suydam has misconstrued the regulatory framework of the Act in his characterization of the Commission's decision as a "revocation proceeding." This case does not involve the revocation of a permit that had already been issued. Suydam sought administrative review of hearing officer Glass's 1991 decision awarding Suydam only five of eight possible points. At that stage in the proceedings, the Commission was empowered to "affirm, modify, or reverse the decision of the hearing officer." 20 AAC 05.1845(h). It was also authorized to re-evaluate the merits of a prior determination at any time until the time for reconsideration of a final decision had expired. *See* 20 AAC 05.1845(i) (stating that Board's authority to reconsider expires 30 days after delivery of decision to the applicant); *see also Moore v. State, Commercial Fisheries Entry Comm'n*, 688 P.2d 582, 587 (Alaska 1984) (interpreting 20 AAC 05.850, as amended by 20 AAC 05.1845(i)).

■ The Commission issued its final decision on July 19, 1993, denying review and affirming Glass's decision in all respects, including the finding that Suydam did not qualify for an AAO point. Thirty days after the date of that decision and denial of reconsideration the Commission lost the ability to reopen the merits of Suydam's application. Until that date, the Commission retained the authority to revisit issues relevant to Suydam's point claims, including his claim of domicile for the purpose of the AAO point. Because the Commission had issued no final decision regarding Suydam's application, it acted properly in re-evaluating his permit application.

2. *The applicant bears the burden of proving each point claimed.*

Determining the appropriate burden and deciding who bears it are questions of law subject to this court's independent review. *See K.N. v. State*, 856 P.2d 468, 476 n. 10 (Alaska 1993); *see also Sloan v. Jefferson*, 758 P.2d 81, 83 (Alaska 1988).

■ Suydam argues that the Commission had the burden of proving by clear and convincing evidence that a previously awarded AAO point should be revoked, and that it failed to meet this standard. The State responds that Suydam had the burden of establishing his qualifications for each and every point he claimed on his permit application. We agree.[8]

"In limited entry proceedings, the applicant bears the burden of establishing qualification for all claimed points." *Lewis v. State, Commercial Fisheries Entry Comm'n*, 892 P.2d 175, 183 (Alaska 1995).[9] Furthermore, that burden remains with the applicant if the applicant requests an administrative hearing. The regulations are unambiguous: "[t]he applicant or other party shall bear the burden of proving by a preponderance of the evidence that a determination of the commission is erroneous." 20 AAC 05.1820(d).

Suydam mistakenly relies on the burden of proof required for a revocation proceeding under AS 16.43.960, in which the Commission bears "the burden of proving by a preponderance of evidence that a person or entity knowingly provided, assisted in providing, or failed to correct false information." 20 AAC

8. We note that resolution of the burden of proof issue is not essential to the outcome of the instant case. Although the burden of proof lay with Suydam, hearing officer Glass erroneously ascribed the burden to the Commission. He then determined that the Commission had satisfied the requirements of its burden, finding that Suydam was not domiciled in Kodiak. As we explain below, regardless of who bore the burden of proof on the issue, the record contains substantial evidence justifying the Commission's finding that Suydam was not a Kodiak domiciliary on December 31, 1976.

9. 20 AAC 05.520(a) provides that "[e]very applicant shall have the burden of establishing his qualifications for an entry permit." This regulation derives from AS 16.43.260(c), which states in relevant part:

When an applicant is unable to establish qualifications for an entry permit by submitting the specific verified evidence required in the application by the commission, the applicant may request and obtain an administrative adjudication of the application according to procedures established in AS 16.43.110(b). At the hearing the applicant may present alternative evidence of qualifications for an entry permit.

05.1820(e). Because the Commission had never granted Suydam a Prince William Sound fishery permit and thus had not formally awarded points that could be revoked, the burden of proof for a revocation proceeding is inapplicable to the circumstances of the present case.[10]

3. *The record contains substantial evidence supporting the Commission's decision that Suydam was not domiciled in Kodiak on the qualifying date.*

■ We review the Commission's factual findings under the substantial evidence standard. *See Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247, 249 n. 4 (Alaska 1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Commercial Fisheries Entry Comm'n v. Baxter*, 806 P.2d 1373, 1374 (Alaska 1991).

Suydam argues that he was domiciled in Kodiak on the qualifying date and that the Commission erred in finding otherwise. "A domiciliary must be physically present and have the subjective intent to remain indefinitely." *Sheley v. Alaska Bar Ass'n*, 620 P.2d 640, 644 n. 24 (Alaska 1980) (citation omitted); *see also Kjarstad v. State*, 703 P.2d 1167, 1171 (Alaska 1985) (applying the test for domicile in the context of a limited entry permit proceeding). Thus, the question before us is whether on December 31, 1976, Suydam was living in Kodiak with the intention to remain there indefinitely.

Suydam contends that "[w]hen a person ... has more than one dwelling place, his domicile is in the earlier dwelling place unless the second dwelling place is his principal home." Restatement (Second) Conflict of Laws § 20 (1971). The Restatement classifies a "principal home" as "that to which [a person] is more closely related, or ... that

which is more nearly the center of his domestic, social and civil life." *Id.* at § 20 cmt. b(2).

Hearing officer Glass concluded that Suydam became domiciled in Washington after he moved his family there from Kodiak, and "Washington became the center of their domestic life." After moving to Washington, Suydam was only physically present in Kodiak when he was fishing. The hearing officer found that Suydam's "home was in Washington, and he rented part of a house in Kodiak only for business purposes. Although Mr. Suydam made an effort to preserve a paper record consistent with a claimed domicile in Kodiak, he intended to make his home in Washington."

Suydam argues that the Commission did not place sufficient weight on other parts of the record, including his own declarations as to what he considered to be his home. Essentially, Suydam asks this court to reweigh the evidence on appeal. Our role is not to reweigh the evidence or choose between conflicting inferences, but to determine whether substantial evidence exists to support the Commission's finding. *See Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974). If the evidence is conflicting, it must be viewed in favor of the agency's findings, even if we might have taken a contrary view of the facts. *See Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980). Additionally, we have held that the Commission is entitled to be skeptical of an applicant's testimony in light of other circumstantial evidence. "Declarations of domicile advantageous to the declarant are to be viewed with suspicion and accorded little weight." *Kjarstad*, 703 P.2d at 1171 (citations omitted).

---

10. Suydam attempts to bolster his argument with previous Commission decisions. Suydam points to a statement by a Commission hearing officer in *Beckstrand*, CFEC File No. 87-0104-A (Sept. 17, 1987), that the Commission bears the burden of proving by a preponderance of evidence that a point previously verified should be revoked, and he relies on *Stroup*, CFEC File No. 89-0096-A (May 5, 1989), for the same proposition.

We are not bound by agency decisions when reviewing questions of law. Instead, we "adopt

the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Because the hearing officers' comments in *Beckstrand* and *Stroup* are inconsistent with the burden of proof established under 20 AAC 05.520(a), requiring each applicant to establish his or her qualifications for all points claimed on an application for an entry permit, neither agency decision controls here.

Based on Suydam's home-ownership in Washington, his mortgages on his principal residences in Washington, his deduction of his Kodiak rent as a business expense, and his applications for Washington state resident fishing permits, we find that substantial evidence in the record supports the Commission's finding that Suydam was not domiciled in Kodiak and therefore was ineligible for an AAO point.

B. *Did the Commission Err in Denying Suydam Past Participation Points for 1976?*

■ "An agency's interpretation of its own regulation presents a question of law." *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982) (citation omitted). Where a question of law implicates the agency's expertise as to complex matters or as to the formulation of fundamental policy, the court should defer to the agency decision as long as it has a reasonable basis. *See id.*

■ We have previously held that because the Commission's interpretation of the Act and the regulations promulgated thereunder "entails both administrative expertise and formulation of fundamental policy ... this process will not be lightly interfered with by this court." *Id.* (internal quotations omitted). Therefore, we review the Commission's interpretation of a regulation regarding past participation in a fishery under the reasonable basis standard.

Once we have resolved the interpretation of the regulations, we review the Commission's factual findings under the substantial evidence standard. *See Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247, 249 n. 4 (Alaska 1982).

1. *The definition of "past participation"*

Suydam presents a two-pronged argument that the Commission erred in denying him past participation points for 1976. Initially

he asserts that he satisfied the criteria of 20 AAC 05.664(a)(3)(B) and therefore met the regulatory definition of past participation.[11] Alternatively, he claims that the Commission abused its discretion by ruling that the Green Island fisher strike did not constitute an "unavoidable circumstance" meriting the award of past participation points under 20 AAC 05.664(a)(2). The State argues that Suydam neither harvested herring in 1976 nor was present on a fishing ground at an opening with the intention to fish and, therefore, failed the test for past participation. The State further argues that Suydam doesn't qualify under the unavoidable circumstances exception because he voluntarily chose not to fish during the strike.

We need only address Suydam's contention that he satisfied the conditions of 20 AAC 05.664(a)(2). Hearing officer Glass found that Suydam did not meet the definition of past participation for 1976 because he neither fished nor intended to fish during the opening at Green Island due to his observance of a fishers' strike. Glass's conclusion, however, was based upon an unreasonable interpretation of 20 AAC 05.664(a)(3)(B).

■ The regulation defines past participation as either the commercial taking of herring or "being on the fishing grounds [in herring administrative areas], with the appropriate vessel, gear, licenses, and interim-use permit *with the intention of taking the herring resource* during the time the season was open and the herring resource was harvested." 20 AAC 05.664(a)(3)(B) (emphasis added). The Commission interpreted "intention of taking the herring resource" to require an "attempt" to harvest herring. It determined that Suydam did not have the requisite intent to fish by virtue of the fact that he did not attempt to set his lines during the strike. We conclude that the Commission erred because the regulation does not require a fisher to actually harvest herring

11. 20 AAC 05.664(a)(3) defines past participation as:

(A) the commercial taking of the herring resource in Herring Administrative Areas A–1, E–1 or H with a herring purse seine, interim-use permit and appropriate licenses; or

(B) being on the fishing grounds in Herring Administrative Areas A–1, E–1 or H, with the appropriate vessel, gear, licenses, and interim-use permit with the intention of taking the herring resource during the time the season was open and the herring resource was harvested.

or to even make such an attempt; it merely requires presence on the grounds coupled with an intention to take the resource.

■ In enacting the point system for Prince William Sound, the Commission recognized the "unusual nature" of the herring purse seine fisheries, noting that "they 'may or may not open to participation depending on the presence or absence of certain amounts of herring being simultaneously present and measurable by the Alaska Department of Fish and Game management personnel.'" *Lewis v. State, Commercial Fisheries Entry Comm'n*, 892 P.2d 175, 177 (Alaska 1995) (quoting Findings of the Commercial Fisheries Entry Commission Regarding the Priority Classification System Proposed for the Prince William Sound, Cook Inlet, and Southeastern Herring Purse Seine Fishery (February 17, 1977)). Moreover, the Commission noted that

> [i]n these fisheries an opening may be measured in hours or minutes, and *it is therefore not uncommon for an operator to be unable to set his net* before the period closes.

*Id.* (emphasis added). Therefore, it is unreasonable for the Commission to assess a fisher's subjective intent to fish based upon whether or not the fisher "attempted to harvest." Rather, a reasonable interpretation of the definition must correlate "intention" with the fisher's purpose behind his or her arrival at the grounds during an opening. It is plausible, given the nature of the fishery, that a fisher may go to great lengths and expense to be present at the fishing grounds with every intention of fishing upon arrival, only to be denied the opportunity to set the lines. The regulation cannot be reasonably interpreted to deny a fisher in that predicament his or her participation points.

### 2. *Suydam's past participation in 1976*

The record before us does not contain substantial evidence to support the Commission's finding that Suydam lacked the requisite intent to fish while at Green Island. The evidence demonstrates that Suydam spent the entire season moving from one fishing area to another to fulfill his intention. He started at Columbia Bay which never opened. He then proceeded to Green Island, and after waiting out the strike for a week, sent one of his boats to Cook Inlet. Suydam spent $2,500 for fuel to get his two boats to the fishing grounds and to feed his crew. Had he not intended to fish, he would not have gone to the expense of organizing a crew and setting out for the fishing grounds, much less remained at Green Island for over a week in anticipation that the strike would abate.

■ Suydam made a significant financial commitment to participate in the herring purse seine fishery in 1976. He was at Green Island with the appropriate vessel, gear, licenses, and interim-use permit and with the intention of taking the herring resource during the time the season was open, and therefore satisfied the requirements of 20 AAC 05.664(a)(3)(B). The Commission incorrectly interpreted and applied the regulation governing past participation. When the regulation is interpreted properly, without an attempt requirement, it is clear that the evidence does not support the Commission's finding that Suydam lacked an intent to fish. We conclude that Suydam met his burden of demonstrating his past participation in 1976. The Commission thus erred in denying Suydam two points. These additional points bring Suydam's Prince William Sound point total to seven points, one greater than the minimum required under 20 AAC 05.666(1). We therefore hold that Suydam is entitled to a Prince William Sound herring purse seine limited entry permit.[12]

### IV. *CONCLUSION*

We REVERSE the Commission's decision regarding Suydam's Prince William Sound entry permit application. Although substantial evidence supported the Commission's denial of Suydam's AAO point, the Commission unreasonably interpreted and applied 20 AAC 05.664(a)(3)(B) when it denied Suydam two points for past participation in 1976.

---

**12.** Because our holding resolves the case in Suydam's favor, we do not address Suydam's due process claims or the merits of Suydam's challenge to the Commission's interpretation of "unavoidable circumstances" under 20 AAC 05.664(a)(2).

Because Suydam was on the fishing grounds in a Herring Administrative Area with the appropriate vessel, gear, licenses, interim permit, and requisite intent to fish for herring, he qualified for two "past participation" points as defined by regulation. As a result, Suydam's points total more than the six points required for the issuance of a Prince William Sound herring purse seine entry permit. We therefore REVERSE the Commission and REMAND with directions to issue Suydam a Prince William Sound herring purse seine permit.