IN THE MATTER OF REVOCATION OF LICENSE OF ROBERT T. BERMAN.

(Filed 20 March, 1957.)

**1. Administrative Law § 3—**

    A licensing board has the inherent power to revoke a license theretofore issued by it on the ground that its issuance was procured by fraud or misrepresentation, notwithstanding the absence of specific statutory provision for revocation on such ground.

**2. Administrative Law § 4—**

The findings of fact of an administrative board are conclusive on appeal if the findings are supported by competent, material and substantial evidence in view of the entire record.

**3. Administrative Law § 3—**

The affidavit of an applicant that he had been engaged in the practice of a dispensing optician for a period of five years next before the enactment of the licensing statute, so as to bring him within the purview of the "grandfather clause" of the Act, is not conclusive, and it is for the administrative board to determine from all the evidence whether he had in fact been engaged in the practice during the time required.

**4. Administrative Law § 4—Finding that applicant had not engaged in practice as dispensing optician within purview of grandfather clause held supported by record.**

In this case *it is held* that upon the entire record there is competent, substantial evidence to the effect that during the period of five years prior to the passage of Art. 17, Ch. 90 G.S., applicant paid no license tax as an optician, did not habitually hold himself out to the public as a dispensing optician, and that, if he was engaged in the practice as a dispensing optician during that time, it was not sufficiently regular, according to his circumstances, to denote a continuing occupation, and, the crucial findings of fact of the board being supported by the evidence, it was error for the Superior Court on appeal to reverse the judgment of the administrative board revoking the license theretofore granted to the applicant under the "grandfather clause" on the ground that its issuance was procured by misrepresentations.

APPEAL by the North Carolina State Board of Opticians from *Bundy, J.,* September Civil Term 1956 of NEW HANOVER.

Proceeding by the North Carolina State Board of Opticians to revoke a license as a dispensing optician issued to Robert T. Berman by it.

On 30 June 1951, pursuant to G.S. 90-242, Robert T. Berman filed his affidavit with the North Carolina State Board of Opticians stating that he has been engaged in the practice of a dispensing optician in Wilmington, North Carolina, for a period of more than five years prior to 1 July 1951: that during 1944 he was so engaged while manager of the Jewel Box, 119 North Front Street, that during the years 1945, 1946 and part of 1947 he was so engaged and doing business under the trade name of The Optical Shop, 111 North Front Street, and during the last part of 1947 and until the present time he has been so engaged in the operation of Berman Jewelers, Inc. in the Trust Building. Whereupon, pursuant to G.S. 90-242, the Board issued to Robert T. Berman a license as a dispensing optician.

On 15 September 1953 the State Board of Opticians, in compliance with G.S. 150-11 (b), gave Robert T. Berman written notice containing a statement that the Board has sufficient evidence which, if not rebutted

or explained, will justify the Board in revoking his license to engage in the practice of a dispensing optician: the general nature of the evidence is that the license was issued to him upon a mis-statement of existing facts. The written notice stated that Berman had a right to request a hearing before the Board.

On 25 September 1953 Berman wrote the Board requesting a hearing and a bill of particulars setting out in detail the alleged mis-statement of facts contained in his affidavit filed with the Board. The Board gave Berman written notice that the hearing would be held on 2 November 1953 in the Office of the Clerk of the Superior Court in Wilmington. On 5 October 1953 the Board furnished Berman a bill of particulars setting forth the contents of the affidavit filed with the Board on 30 June 1951, and stating the Board is advised that Berman was not engaged in the practice of a dispensing optician for a period of more than five years next preceding 1 July 1951.

The State Board of Opticians, with all its members present, conducted the hearing at the time and place specified in its written notice, and heard evidence. On 18 January 1954 the Board rendered its decision. In its decision the Board made findings of fact that on 30 June 1951 Berman filed with it an affidavit, the contents of which are set forth above, and the affidavit is copied verbatim in the findings, that relying upon the information contained in the affidavit the Board issued a license to Berman to practice as a dispensing optician, that the facts set forth in the affidavit were erroneous in that the evidence overwhelmingly establishes that during the years 1945, 1946 and part of 1947, Berman was not engaged in the practice of a dispensing optician doing business under the trade name of The Optical Shop at 111 North Front Street in Wilmington, and that on 30 June 1951 Berman had not been engaged in the practice of a dispensing optician for a period of five years. The Board made conclusions of law, that, by virtue of G.S. 90-242, Berman, on 30 June 1951, in order to be entitled to engage in the practice of a dispensing optician was required to show by affidavit that he had been engaged in such practice as defined in the statute for five years or more, and that upon the foregoing findings of fact Berman was not entitled on 30 June 1951 to a certificate of registration and license as a dispensing optician under the provisions of G.S. 90-242. Whereupon, the Board revoked the license it had previously issued to Berman.

Berman excepted to the crucial findings of fact, conclusions of law, and decision of the Board, and appealed to the Superior Court.

The proceeding was heard in the Superior Court, and Judge Bundy rendered judgment. The judgment recites that the Board's finding that Berman on 30 June 1951 had not been engaged in the practice of a dispensing optician for a period of five years prior to that date, upon

which it based its conclusion of law and order revoking his license, is unsupported by competent, material and substantial evidence, that no witness testified he did not engage in such practice during the five years preceding the date of his affidavit, that nowhere in the record is there one iota of evidence that Berman was not engaged in such practice during such period, while Berman's evidence and that of J. E. L. Wade disclosed that he was so engaged, and a like inference can be drawn from the testimony of G. J. Burkheimer. Whereupon, Judge Bundy reversed the decision of the Board.

The North Carolina State Board of Opticians excepted to the judgment, and appealed.

*Clem B. Holding and Ozmer L. Henry for North Carolina State Board of Opticians, Appellant.*
*W. K. Rhodes, Jr., for Appellee.*

PARKER, J. The power to issue licenses to persons practicing as dispensing opticians before the enactment of G.S. Ch. 90, Art. 17, Dispensing Opticians, has been vested by the General Assembly in the North Carolina State Board of Opticians, provided they apply within the required time. G.S. 90-242 provides that "every person who has been engaged in the practice of a dispensing optician as defined in this article for a period of five (5) years or more, and who has been a resident of the State of North Carolina for two (2) years immediately prior to the date of the passage of this article, shall be eligible for and receive a license as a dispensing optician; said person shall file an affidavit as proof of such practice with the Board." In 4 A.L.R. 2d is an elaborate annotation, pp. 667-717, *in re* the construction of a "grandfather clause" in statutes licensing occupations. Robert T. Berman filed an affidavit with the North Carolina State Board of Opticians, in which he stated that he had the qualifications required by G.S. 90-242, and the Board issued to him a license as a dispensing optician. In this proceeding the Board is seeking to revoke his license on the ground that he procured it by a material misrepresentation, in that he stated in his affidavit that he had been engaged in the practice of a dispensing optician as defined in Art. 17, Ch. 90 G.S. for a period of five years or more, whereas in truth and in fact he had not been so engaged in such practice for such a period of time.

It is clear that the Board had the right to refuse an application for a license requested by virtue of G.S. 90-242, if it appeared that the applicant had not been engaged in the practice of a dispensing optician as defined in Art. 17, Ch. 90 G.S. for a period of five years or more. Certain grounds for revocation of a license issued by the Board are set forth in G.S. 90-249. Fraud or misrepresentation, which is material, in

the procurement of the license is not one of them, but the Board has inherent power, independent of statutory authority, to revoke a license it improperly issued by reason of material fraud or misrepresentation in its procurement. *Attorney-General v. Gorson,* 209 N.C. 320, 183 S.E. 392; *Schireson v. Shafer,* 354 Pa. 458, 47 A. 2d 665, 165 A.L.R. 1133; *Williams v. Dickey,* 204 Okla. 629, 232 P. 2d 637; *Butcher v. Maybury,* 8 F. 2d 155; *Vanaman v. Adams,* 74 N.J.L. 125, 65 A. 204; *Martin v. Morris,* 62 N.D. 381, 243 N.W. 747; *Volp. v. Saylor,* 42 Ore. 546, 71 P. 980; Annotation 165 A.L.R. pp. 1141-1142, where cases are cited from 21 states; 53 C.J.S., Licenses, p. 650.

In *Attorney-General v. Gorson, supra,* the Court said: "This Court has the inherent power to revoke a license to practice law in this State, where such license was issued by this Court, and its issuance was procured by the fraudulent concealment, or by the false and fraudulent representation by the applicant of a fact which was manifestly material to the issuance of the license."

In *Schireson v. Shafer, supra,* it was held that the power of a state to require a license implies the power to revoke a license which by reason of fraud in its procurement was improperly issued, and where a physician's license should never have been granted because of fraud or misrepresentation, the licensing authority has inherent power, independent of statutory authority, to revoke it.

In *Butcher v. Maybury, supra,* the Court said: "The power of the state to require a license implies the power to revoke a license which has been improperly issued."

G.S. 90-249 states the procedure for revocation and suspension of licenses of dispensing opticians by the State Board of Opticians shall be in accordance with the provisions of Ch. 150 of the General Statutes, which is entitled Uniform Revocation of Licenses. G.S. 150-23 provides "the decision of the Board shall contain (a) Findings of fact made by the Board; (b) Conclusions of law reached by the Board; (c) the Order of the Board based upon these findings of fact and conclusions of law."

G.S. 150-27 sets forth the scope of review by the Superior Court of the Board's decision, and states that the Judge shall sit without a jury and may affirm the decision of the agency, or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of a person may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are unsupported by competent, material and substantial evidence in view of the entire record as submitted.

The administrative findings of fact made by the State Board of Opticians, if supported by competent, material and substantial evidence in view of the entire record, are conclusive upon a reviewing

court, and not within the scope of its reviewing powers. *Baker v. Varser,* 240 N.C. 260, 82 S.E. 2d 90; 42 Am. Jur., Public Administrative Law, Sec. 211, where great numbers of cases from State and Federal Courts are cited.

The fact that a statute provides for judicial review of administrative decisions makes it evident that such decisions are conclusive as to properly supported findings of fact. *Social Security Board v. Nierotko,* 327 U.S. 358, 90 L. Ed. 718.

The Court cannot substitute its judgment for that of the State Board of Opticians in making findings of fact. *Baker v. Varser, supra; National Labor Relations Board v. Va. E. & P. Co.,* 314 U.S. 469, 86 L. Ed. 348; *U. S. v. New River Co.,* 265 U.S. 533, 68 L. Ed. 1165; 42 Am. Jur., Public Administrative Law, pp. 632-3.

The General Assembly in explicit words has vested the power and function of appraising conflicting and circumstantial evidence, of determining the weight and credibility to be given the testimony, and of finding the necessary facts in the State Board of Opticians. "The conclusiveness and nonreviewability of administrative findings of fact," when supported by proper evidence, "have often been rationalized on the ground that the administrative agency possesses the special knowledge and expertness that is required to pass upon such questions." 42 Am. Jur., Public Administrative Law, p. 633.

G.S. 90-236 sets forth what constitutes practicing as a dispensing optician, and reads: "Any one or combination of the following practices when done for pay or reward shall constitute practicing as a dispensing optician: interpreting prescriptions issued by licensed physicians and/or optometrists; fitting glasses on the face; servicing glasses or spectacles; measuring of patient's face, fitting frames, compounding and fabricating lenses and frames, and any therapeutic device used or employed in the correction of vision, and alignment of frames to the face of the wearer."

The term "grandfather clause" in comparatively recent years "has been applied to provisions in regulatory statutes or ordinances that extend certain prerogatives to persons theretofore established in the profession, occupation or business regulated." 4 A.L.R. 2d, annotation, p. 670.

The mere filing of an affidavit by Robert T. Berman with the State Board of Opticians as proof that he had been engaged in the practice of a dispensing optician as defined in G.S. Ch. 90, Art. 17, for a period of five years or more prior to the enactment of Art. 17, is not conclusive as to his right to receive a license, even though G.S. 90-242 states the applicant shall file an affidavit as proof of such practice, since the essential fact for the granting of such license to Robert T. Berman is that he was in fact engaged in the practice of a dispensing optician

during the time required by G.S. 90-242. *State ex rel. Copeland v. State Medical Board,* 107 Ohio St. 20, 140 N.E. 660; *Sherburne v. Dental Examiners,* 13 Idaho 105, 88 P. 762; *Sanborn v. Weir,* 95 Vt. 1, 112 A. 228; *S. v. Schmidt,* 138 Wis. 53, 119 N.W. 647; Annotation 4 A.L.R. 2d pp. 671-673. See *Poole v. The State Board of Cosmetic Art Examiners,* 221 N.C. 199, 19 S.E. 2d 635, where the Court said: "However, of necessity, such Board must find the facts with respect to these requirements."

What does practicing as a dispensing optician, as defined in Art. 17, Ch. 90 of the General Statutes, prior to the passage of Art. 17 mean? In *State ex rel. Krausmann v. Streeter,* 226 Minn. 458, 33 N.W. 2d 56, 4 A.L.R. 2d 662, the Court said: "The general rule is that a practitioner of a trade or profession, in the contemplation of the grandfather clause, is one who habitually holds himself out to the public as such (*Hart v. Folsom,* 70 N.H. 213, 47 A. 603; *S. v. Bryan,* 98 N.C. 644, 4 S.E. 522; *Sanborn v. Weir,* 95 Vt. 1, 112 A. 228), and, although the extent of his practice is not controlling, it must be sufficiently regular, according to the circumstances of the particular case, to denote a continuing occupation. *Sanborn v. Weir, supra.*" See annotation 4 A.L.R. 2d pp. 680-684.

In *Sanborn v. Weir, supra,* the Court said: "Nevertheless 'practice' like 'doing business' does not denote a few isolated acts, but implies an occupation that is continuing."

In *S. v. Bryan,* 98 N.C. 644, 4 S.E. 522, the defendant, a justice of the peace, was indicted for practicing law in a court of a justice of the peace in the county in which he held the office of justice of the peace. The Court said: "There was no evidence that the defendant was in the habit of appearing or practicing 'as an attorney at law,' or that he received any compensation, or that he held himself out to the public as an attorney at law."

Robert T. Berman stated in his affidavit filed with the State Board of Opticians, pursuant to G.S. 90-242, that he "is now, and has been, engaged in the business of a dispensing optician in the city of Wilmington, county of New Hanover, and State of North Carolina, continuously for a period of more than five years next preceding July 1, 1951; that during the year 1944 he was so engaged while manager of 'The Jewel Box,' at No. 119 North Front Street; and that during the years 1945, 1946, and part of the year 1947, he was so engaged and doing business under the trade name of 'The Optical Shop' at No. 111 North Front Street in the city of Wilmington." The Board found as a fact that the facts set forth in Robert T. Berman's affidavit "were erroneous in that the evidence in this case overwhelmingly establishes that 'during the years of 1945, 1946 and part of the year 1947' the said Robert T. Berman was not engaged as a dispensing optician, doing business under

the trade name of The Optical Shop, at 111 North Front Street, in the city of Wilmington, North Carolina, and that on June 30, 1951 the said Robert T. Berman had not been engaged in the practice of a dispensing optician for a period of five years."

The State Board of Opticians assigns as error the ruling of the judge below that the above crucial findings of fact by the Board are not supported by competent, material and substantial evidence in view of the entire record, and the judgment below reversing the Board's decision.

The following evidence in the Record supports the Board's crucial findings of fact: J. B. Little of Goldsboro has been connected with the American Optical Company since 1935. In 1944 Hugh Bell, Jr., told Little he would like to do business with the American Optical Company. Little called on Bell at The Jewel Box in Wilmington, and told him they wouldn't be able to do business with him as long as he was in The Jewel Box. In May or June 1945, Bell moved down Front Street a couple of doors from The Jewel Box and opened up a place under the name of The Optical Shop, of which he was the owner and operator. Little sold him supplies from the American Optical Company for a little over a year, after which Bell went out of business in 1946, and the American Optical Company had to sue him for its money. Little was asked on cross-examination by Berman's counsel, "did you ever see Mr. Berman," and replied "I may have seen him."

E. W. Dula of Durham has been in the wholesale optical business since 1934, and is also a dispensing optician. In March 1946 he bought from Hugh Bell, Jr. the edger machinery, the drill, the fitting table and lens marker, which were in The Optical Shop located on North Front Street in Wilmington. Bell told him he was closing the business up, and after his purchase, Dula testified, "I can't recall exactly whether there was any machinery left or not." Dula made payment for his purchases by two cheques: one, in the sum of $100.00 dated 12 March 1946, payable to Hugh Bell, Jr., and the other in the sum of $675.00 dated 19 March 1946, payable to The Optical Shop.

On 11 May 1945 Peoples Bank & Trust Company leased to Hugh Bell, Jr., trading and doing business as The Optical Shop, for one year the space occupied by The Optical Shop. The lease was signed by the Bank and for The Optical Shop by Robert T. Berman and Hugh Bell, Jr. On 9 April 1946 the Bank leased this space for one year to The Jewel Box, Inc. Berman signed for The Jewel Box. The officer of the Bank who gave this testimony testified that during the time of these two leases there were eyeglasses in the windows, and machinery in there.

Berman offered the evidence of J. E. L. Wade, who testified that he knew Robert T. Berman when he was operating in 1945 and 1946 The Jewel Box on North Front Street. That he operated an optical

shop in connection with The Jewel Box. He said, "people have been buying glasses; I bought some myself." That Berman was in and out the space leased by the Bank: it was almost next door to The Jewel Box.

Robert T. Berman testified in substance as follows: He has been in the jewelry business, and several types of businesses associated with the jewelry business, including the optical business, for 25 years, as best he could under the circumstances. As manager of The Jewel Box he replaced glasses and filled prescriptions, and was engaged in the business of a dispensing optician. He financed The Optical Shop. After Bell moved out, he operated as a dispensing optician in The Jewel Box. In 1951 he started the business of Berman's Jewelers, and practiced as a dispensing optician. He has purchased equipment from Homer Optical Company since around 1944, and also from smaller companies. When The Optical Shop closed, he was still in the optical business. On cross-examination he said he had all the prescriptions he had filled, with the exception of those lost in a fire five or six years before. He further said on cross-examination that he had a license to operate The Jewel Box as a jewelry store, but did not have a license to operate as an optician: that an employee of the State Tax Department in Wilmington, whose name he does not know and has no way to find out, told him it was not necessary for him to have a license as an optician, as he already had a license to operate a business. In 1951 he did acquire a license as an optician, because of the new rule drawn up in the optical field.

During the five years prior to 1 July 1951 every practicing optician under 75 years of age was required to obtain a license for the privilege of engaging in such business and to pay for such license. G.S. 105-41. At the time of the hearing Berman was 42 years of age.

In the entire record before us there is competent, material and substantial evidence to the effect, that during the period of five years prior to the passage of Art. 17, Ch. 90 G.S., Robert T. Berman paid no license tax as an optician, did not habitually hold himself out to the public as a dispensing optician, and that, if he was engaged in practice as a dispensing optician during that period, it was not sufficiently regular, according to his circumstances, to denote a continuing occupation, in that in his affidavit he stated that during the years 1945, 1946 and part of the year 1947, he was engaged in the practice of a dispensing optician and doing business under the trade name of "The Optical Shop," and all the evidence shows The Optical Shop sold its optical equipment, and went out of business in March 1946. The purchase of glasses by J. E. L. Wade, and his vague testimony "people have been buying glasses," are isolated acts that do not imply a continuing occupation for five years as a dispensing optician. The crucial findings of fact by

the Board, in view of the entire record, are supported by competent, material and substantial evidence, and are conclusive upon the reviewing court. The judge below erred in ruling that the Board's findings of fact were not so supported. The Board's findings of fact support its inferences, conclusion and decision, and the judge erred in reversing the Board's decision. It is ordered that a judgment be entered in the Superior Court in accordance with this opinion affirming the Board's decision.

Reversed.