411 S.E.2d 481

Ronnie MOUNTS, Plaintiff
Below, Appellee,

v.

Gerald L. CHAFIN, Sheriff of
Mingo County, Defendant
Below, Appellant.

No. 20017.

Supreme Court of Appeals
of West Virginia.

Submitted Sept. 18, 1991.

Decided November 15, 1991.

Michael Thornsbury, Larry E. Thompson, Thornsbury & Thompson, Williamson, for appellee.

William H. Duty, Asst. Pros. Atty., Williamson, for appellant.

MILLER, Chief Justice:

This is an appeal from a final order of the Circuit Court of Mingo County, dated July 23, 1990, which issued a writ of mandamus to compel the respondent, Gerald L. Chafin, the Sheriff of Mingo County, to reinstate the petitioner, Ronnie Mounts, to his former position of deputy sheriff with full back pay. We conclude that the petitioner was not entitled to the writ of mandamus, and we reverse.

At issue in this appeal is the Law Enforcement Training and Certification Act (the Act), W.Va.Code, 30-29-1, *et seq.* This statute requires law enforcement officers to be certified by the Governor's Committee on Crime, Delinquency and Correction (Governor's Committee) as having met certain minimum qualifications as a condition of employment by any West Virginia law enforcement agency.[1] Generally, the Act provides for certification upon completion of a prescribed training course; however, the Act also permits one employed as a police officer on its effective date, July 9, 1981, to obtain certification without such training upon a showing that he was employed as a law enforcement officer "for a period of not less than five consecutive years immediately preceding the date of application for certification."[2] W.Va.Code, 30-29-5(d) (1983). Under W.Va.Code, 30-29-5(f) (1983), a law enforcement officer

1. W.Va.Code, 30-29-5(a) (1983), provides:

"Except as provided in subsections (b) and (g) below, no person may be employed as a law-enforcement officer by any West Virginia law-enforcement agency on or after the effective date [July 9, 1981] of this article unless the person is certified, or is certifiable in one of the manners specified in subsections (c) through (e) below, by the governor's committee as having met the minimum entry level law-enforcement qualification and training program requirements promulgated pursuant to this article."

W.Va.Code, 30-29-1 (1984), defines a "West Virginia law-enforcement agency" as "any duly authorized state, county or municipal organization employing one or more persons whose responsibility is the enforcement of laws of the state or any county or municipality thereof."

2. Initially, the Act permitted an officer to be certified without completing a training program upon a showing that he "has attained exempt rank and has been employed as a law-enforcement officer for a period of not less than ten years." W.Va.Code, 30-29-5(d) (1981). The Act was subsequently amended to extend certification to one "employed as a law-enforcement officer for a period of not less than seven consecutive years immediately preceding the date of application for certification." W.Va.Code, 30-29-5(d) (1982). The current provision, W.Va.Code, 30-29-5(d) (1983), states, in pertinent part:

"Any person who is employed as a law-enforcement officer on the effective date [July 9, 1981] of this article and is not a graduate of the West Virginia basic police training course, the West Virginia department of public safety cadet training program, or other approved law-enforcement training academy, is certifiable as having met the minimum entry level law-enforcement training program requirements and is exempt from the requirement of attending a law-enforcement training academy if the person has been employed as a law-enforcement officer for a period of not less than five consecutive years immediately preceding the date of application for certification."

who "fails to be certified shall be automatically terminated[.]"[3]

The petitioner was hired as a deputy sheriff in Mingo County on July 1, 1981. Two months later, the petitioner filed an application with the Governor's Committee seeking certification without completion of a training program under the "grandfather" provisions of W.Va.Code, 30–29–5(d) (1981). At that time, the petitioner's prior law enforcement experience consisted of three years as a constable between 1973 and 1977. For reasons not germane to this case, the application was not processed until June of 1983,[4] when the Governor's Committee received a notarized employment statement from the Mingo County Sheriff's Department attesting that the petitioner had been employed as a deputy sheriff continuously since July 1, 1975. On June 30, 1983, the petitioner was certified as a West Virginia law enforcement officer under the grandfather provisions of the Act.

In 1988, the Governor's Committee reviewed the petitioner's application for certification, and, upon receipt of updated employment records, discovered that the petitioner did not have the necessary years of employment to be certified under W.Va. Code, 30–29–5(d). By letter dated September 5, 1989, the Governor's Committee advised the petitioner that his law enforcement certification was void. The Governor's Committee offered to make a slot available for the petitioner in the next training program in January, 1990, to allow him to continue his employment until the beginning of the program,[5] and to recertify him upon successful completion of the

course. A copy of the letter was forwarded to Sheriff Chafin.

The petitioner did not respond to this letter. On October 18, 1989, the Governor's Committee advised Sheriff Chafin that the petitioner had failed to accept the conditions of his continued employment and could no longer be employed as a law enforcement officer. By letter dated November 8, 1989, the sheriff advised the petitioner that his employment would be terminated effective November 15, 1989.

The petitioner subsequently requested a hearing before the Deputy Sheriff Civil Service Commission of Mingo County (Commission) to challenge his removal. At the close of the hearing conducted on April 26, 1990, the two commissioners present disagreed as to whether the petitioner should be reinstated.

On June 21, 1990, the petitioner instituted mandamus proceedings in the Circuit Court of Mingo County to compel Sheriff Chafin to reinstate him. After a hearing, the circuit court granted the petition, primarily on the ground that the Governor's Committee had no statutory authority to revoke the petitioner's law enforcement certification.

## I.

The threshold issue in this appeal is whether mandamus was a proper remedy in the proceedings below. The general rule for determining the appropriateness of mandamus was stated in Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969):

"A writ of mandamus will not issue unless three elements coexist—(1) a clear

---

3. W.Va.Code, 30–29–5(f), provides:

"Any person who is employed as a law-enforcement officer on or after the effective date [July 9, 1981] of this article and fails to be certified shall be automatically terminated and no further emoluments shall be paid to such officer by his employer. Any person terminated shall be entitled to reapply, as a private citizen, to the subcommittee for training and certification, and upon being certified may again be employed as a law-enforcement officer in this state."

4. W.Va.Code, 30–29–5(h) (1981), permitted law enforcement agencies with a civil service system to apply for a two-year exemption from the mandatory training and certification provisions under certain circumstances. The same section authorized agencies without a civil service system to apply for a five-year exemption. The current Act contains the same provision. W.Va. Code, 30–29–5(h) (1983).

5. W.Va.Code, 30–29–5(b) (1983), permits conditional employment of uncertified officers under specified conditions.

legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

*Accord Halstead v. Dials,* 182 W.Va. 695, 391 S.E.2d 385 (1990).

We do not believe that the petitioner has demonstrated entitlement to the writ of mandamus under the standard enunciated in *Kucera.* The petitioner chose to challenge the sheriff's decision to fire him in proceedings before the local deputy sheriffs civil service commission. W.Va.Code, 7–14–17(a) (1981), provides that no deputy covered by civil service shall be dismissed "except for just cause." Upon request, a deputy against whom adverse action is taken is entitled to a hearing before the civil service commission, at which the burden is on the sheriff to justify the deputy's dismissal. W.Va.Code, 7–14–17(a). Either party has a right to appeal to or to seek a writ of mandamus in the circuit court to challenge the civil service commission's ruling. W.Va.Code, 7–14–17(b).

 Clearly, the sheriff met his burden of proof in the proceedings before the Commission. As we have already seen, W.Va.Code, 30–29–5(a), and W.Va.Code, 30–29–5(f), preclude any person who has not been properly certified from being employed as a law enforcement officer in this State. Once the Governor's Committee advised him that the petitioner was not properly certified, Sheriff Chafin not only had just cause to fire the petitioner; he was required to do so by law. To require the sheriff to reinstate the petitioner without such certification would violate the mandatory provisions of the Act. It is a well settled rule that " '[m]andamus will not lie to compel the performance of an illegal or unlawful act.' Point 2, syllabus, *State ex rel. Damron v. Ferrell,* 149 W.Va. 773 [143 S.E.2d 469 (1965)]." Syllabus Point 3, *State ex rel. County Court v. Arthur,* 150 W.Va. 293, 145 S.E.2d 34 (1965). *See also*

*State ex rel. Board of Educ. v. Casey,* 179 W.Va. 733, 349 S.E.2d 436 (1986).

 Nor does the circuit court have the power to determine the correctness of the administrative decision to revoke the petitioner's certification. The general rule with respect to the role of courts in administrative proceedings was set out in Syllabus Point 1 of *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985):

" ' "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. Pt. 1, *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958).' Syl.Pt. 1, *Cowie v. Roberts,* [173 W.Va. 64], 312 S.E.2d 35 (1984)."

*See also Bank of Wheeling v. Morris Plan Bank & Trust Co.,* 155 W.Va. 245, 183 S.E.2d 692 (1971). In *State ex rel. Gooden v. Bonar,* 155 W.Va. 202, 210, 183 S.E.2d 697, 702 (1971), we recognized the applicability of the rule in mandamus cases: "Mandamus is available only when all administrative remedies have been exhausted and when there is no other available adequate remedy." (Citations omitted). *Accord Capitol Bus. Equip., Inc. v. Gates,* 155 W.Va. 260, 184 S.E.2d 125 (1971).

 Here, if the petitioner had desired to challenge the decision of the Governor's Committee to revoke his certification, he should have done so by the procedures set out in the Act. W.Va.Code, 30–29–5(i) (1983), permits an officer or applicant to challenge decisions of the Governor's Committee with regard to law enforcement certification according to the provisions of the state Administrative Procedures Act (APA).[6] The APA provides for notice and an opportunity to be heard in any contested case and for judicial review of the agency's decision. W.Va.Code, 29A–5–1, *et seq.*

---

**6.** W.Va.Code, 30–29–5(i), provides: "Any person aggrieved by a decision of the governor's committee made pursuant to this article may contest such decision in accordance with the provisions of article five [§ 29A–5–1 et seq.], chapter twenty-nine-a of this code."

The designation in the Act of the APA as the proper method of contesting the decisions of the Governor's Committee represents a clear legislative determination that these procedures are to be the exclusive means of contesting the actions of the Governor's Committee. *See* 53 C.J.S. *Licenses* § 54 (1987). The Governor's Committee, the body charged by law with responsibility for certifying law enforcement officers, has the administrative expertise to apply the provisions of the Act and of its own rules and regulations to any facts that might be developed.

The evidence adduced below shows that the petitioner asked the Governor's Committee to afford him a hearing under the APA by letter dated November 10, 1989. It does not appear, however, that any hearing took place as a result of this request. The petitioner offered no explanation for the lack of further proceedings before the Governor's Committee. Because the petitioner makes no claim of negligence or undue delay on the part of the Governor's Committee and offers no explanation for the lack of further proceedings, we must conclude that he chose not to pursue his remedies under the APA.

Under these circumstances, we must conclude that the petitioner failed to exhaust his administrative remedies before seeking relief in mandamus before the circuit court. Consequently, the circuit court was not empowered to review the decision of the Governor's Committee to rescind the petitioner's law enforcement certification. Because we have already concluded that Sheriff Chafin demonstrated just cause for discharging the petitioner by showing that the petitioner's law enforcement certification had been revoked, there would appear to be no basis for the issuance of a writ of mandamus in this case.

We have recognized, however, that "[t]here are exceptions to this general rule of exhaustion of administrative remedies such as lack of agency jurisdiction or the constitutionality of the underlying agency statute." [7] *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 421, 275 S.E.2d 15, 22 (1981). (Citations omitted). Thus, where an agency clearly has no jurisdiction or has exceeded its statutory authority, and the issue may be resolved purely as a question of law, without the necessity of resolving disputed facts, a party may not be required to exhaust his administrative remedies before invoking the power of the courts. 4 K. Davis, *Administrative Law Treatise* §§ 26:1, 26:4 (2d ed. 1983); 2 Am.Jur.2d *Administrative Law* § 604 (1962); 73 C.J.S. *Public Administrative Law & Procedure* § 41 (1983).

The circuit court here based its ruling partly on its conclusion that the Governor's Committee did not have the statutory authority to revoke the petitioner's law enforcement certification. To the extent that this issue is reviewable as a matter of law, we will consider it.

II.

W.Va.Code, 30-29-6, authorizes the Governor's Committee to revoke or refuse to renew certification if a law enforcement officer fails to attend periodic in-service training programs.[8] The petitioner notes that these are the only grounds for revocation or nonrenewal specified in the Act and argues that once an officer has been certified, he cannot subsequently lose his certification for any other reason. Implicit in this argument is the assumption that once acquired, by whatever means, the certification is irrevocable except upon those grounds specified in the Act.

We have no case nor can we find one in another jurisdiction which discusses

---

**7.** In Syllabus Point 5 of *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987), we stated: "The general requirement of the exhaustion of administrative remedies is not a jurisdictional doctrine, but is a matter of comity, within the discretion of the trial court."

**8.** W.Va.Code, 30-29-6, provides:
"Certification of each West Virginia law-enforcement officer shall be reviewed annually following the first certification and until such time as the officer may achieve exempt rank. Certification may be revoked or not renewed if any law-enforcement officer fails to attend annually an in-service approved law-enforcement training program, or if a law-enforcement officer achieving exempt rank fails to attend biennially an approved in-service supervisory level training program."

this question in the context of law enforcement certification. However, in *State ex rel. Morris v. West Virginia Racing Commission*, 133 W.Va. 179, 194, 55 S.E.2d 263, 271 (1949), we recognized, in a different context,[9] the general rule that a board or agency with the power to license an activity or occupation has inherent power to revoke such license for good cause:

> " 'A license may be revoked for due cause at any time in accordance with provisions in the licensing act or ordinance or in the certificate of license. A license may also be revoked in the exercise of the police power of the state, whether or not the power to revoke is expressly or impliedly reserved in the licensing statute or in the certificate of license.' " *Quoting* 53 C.J.S. 649.

*See also* 51 Am.Jur.2d *Licenses & Permits* § 58 (1970). It also appears to be widely accepted that fraud or misrepresentation in a license application is a ground for revocation of the license. *See generally* 51 Am. Jur.2d *Licenses & Permits* § 58 (1970); 53 C.J.S. *Licenses* § 52 (1987); Annot., 165 A.L.R. 1138 (1946). *See also North v. West Virginia Bd. of Regents*, 175 W.Va. 179, 332 S.E.2d 141 (1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).

■ In other jurisdictions, it has been held that where a statute enumerates the grounds upon which a license may be revoked, revocation cannot be had on any ground not expressly listed in the statute. *See Bach v. Florida State Bd. of Dentistry*, 378 So.2d 34 (Fla.App.1979); *Middleton v. Kavenedas*, 298 Ky. 296, 182 S.W.2d 896 (1944); *Burley v. City of Annapolis*, 182 Md. 307, 34 A.2d 603 (1943); *Roberts v. State Bd. of Embalmers & Funeral Directors*, 78 N.M. 536, 434 P.2d 61 (1967). It has also been recognized by a majority of jurisdictions, however, that there is always implied power to revoke a license that was improperly issued. *See generally* 53 C.J.S. *Licenses* § 52 (1987); Annot., 165 A.L.R. 1138 (1946). In *Schireson v. Shafer*, 354 Pa. 458, 461–62, 47 A.2d 665, 667, 165

A.L.R. 1133, 1137 (1946), for example, a physician challenged the authority of the licensing board to revoke his license to practice medicine on the ground of fraud or misrepresentation in the procurement of the license where the statute did not list such an occurrence as a ground for revocation:

> "While it is true that such legislation is penal in nature and must therefore be strictly construed ..., it is also the general rule that where the license should never have been granted for reasons such as fraud or forgery, the licensing authority has the *inherent power* to revoke it: ..., 'The power of the state to require a license implies the power to revoke a license which has been improperly issued': *Butcher et al. v. Maybury*, 8 Fed. (2d) 155, 159 [ (D.C.1925) ]. See also *Vanaman v. Adams*, 74 N.J.L. 125, 65 Atl. 204 [ (1906) ]; *Martin v. Morris*, 62 N.D. 381, 243 N.W. 747 [ (1932) ]; *Volp v. Saylor et al.*, 42 Ore. 546, 71 Pac. 980 [ (1903) ]." (Emphasis in original; citations omitted).

*See also Kudla v. Modde*, 537 F.Supp. 87 (E.D.Mich.1982), *aff'd*, 711 F.2d 1057 (6th Cir.1983); *Arroyo v. Moss*, 56 N.Y.S.2d 29 (Sup.Ct.), *aff'd*, 269 App.Div. 824, 56 N.Y.S.2d 17 (1945), *aff'd*, 295 N.Y. 754, 65 N.E.2d 570 (1946); *Williams v. Dickey*, 204 Okla. 629, 232 P.2d 637 (1951); *Jacoby v. South Carolina State Bd. of Naturopathic Examiners*, 219 S.C. 66, 64 S.E.2d 138 (1951). *See generally* Annot., 165 A.L.R. 1138 (1946).

Of particular interest to us is *In re Berman*, 245 N.C. 612, 97 S.E.2d 232 (1957), where the Supreme Court of North Carolina upheld the revocation of an optician's license on the ground that the licensee had falsely represented that he had been in practice for a sufficient number of years to entitle him to obtain a license without submitting to an examination. The court noted that while fraud or misrepresentation was not one of the grounds for revocation set forth in the licensing statute, "the Board has inherent power, independent of

---

**9.** In *Morris,* the Racing Commission had suspended a horse owner's license to race when her horse tested positive for illegal drugs. The horse owner challenged the regulation under which her license was revoked as an invalid delegation of the State's police power and as a violation of due process.

statutory authority, to revoke a license it improperly issued by reason of material fraud or misrepresentation in its procurement." 245 N.C. at 616, 97 S.E.2d at 235. (Citations omitted).

But for the particular profession involved, the facts of this case are virtually identical to those of *Berman.* It is not disputed that the petitioner here obtained his original certification based on false representations that he had five consecutive years of law enforcement experience immediately prior to his application for certification. It is also undisputed that if the Governor's Committee had known the truth, it would not have issued the certification until the petitioner had completed the required training program. Upon these facts, we see no reason to reach a result different from that in *Berman* or the other cases cited above. The fact that the Act does not specifically enumerate fraud or misrepresentation in the procurement of a

law enforcement certification as a ground for revocation does not preclude the Governor's Committee from revoking an improperly issued certification.[10]

Moreover, we note that pursuant to W.Va.Code, 30–29–3(f) and (h) (1982), the Governor's Committee is charged with promulgating "standards governing the qualification of law-enforcement officers" and with certifying law enforcement officers.[11] In furtherance of these obligations, the Governor's Committee has promulgated § 149–2–16.1.3 of the West Virginia Code of State Regulations, which states that the Governor's Committee may suspend, revoke, or deny certification to any law enforcement officer "[w]ho was found to have supplied or acquiesced in [supplying] false information ... to the [Governor's] Committee[.]"[12] This provision clearly authorized the Governor's Committee to revoke the petitioner's law enforcement certification.

**10.** The petitioner equates this result with "telling a successful lawyer who has practiced eight (8) years in his trade, that his undergraduate [school] made a mistake in calculating his graduation credits and that his career and ability to practice his trade [are] gone." In reality, the petitioner's circumstances are more akin to those of an attorney who obtains his license to practice law without taking the bar examination by falsely representing in his application that he is a member in good standing of the bar of another state. In virtually every case, courts have held that such misrepresentations are grounds for revoking the attorney's license to practice law. *See, e.g., In re Bradley,* 14 Idaho 784, 96 P. 208 (1908); *People ex rel. Deneen v. Hahn,* 197 Ill. 137, 64 N.E. 342 (1902); *Matter of Price,* 226 App.Div. 460, 235 N.Y.S. 601 (1929); *In re Leonard,* 127 App.Div. 493, 111 N.Y.S. 905, *aff'd,* 193 N.Y. 655, 87 N.E. 1121 (1908); *In re Olmstead,* 11 N.D. 306, 91 N.W. 943 (1902); *Dean v. Stone,* 2 Okla. 13, 35 P. 578 (1894).

**11.** W.Va.Code, 30–29–3, provides, in pertinent part:

"Upon recommendation of the subcommittee, the governor's committee shall, by or pursuant to rule or regulation:

\* \* \* \* \* \*

"(f) Promulgate standards governing the qualification of law-enforcement officers and the entry level law-enforcement training curricula....

\* \* \* \* \* \*

"(h) Certify law-enforcement officers, as provided in section five [§ 30–29–5] of this article[.]"

**12.** W.Va. C.S.R. § 149–2–16 (Eff. date 5/12/89) provides:

"16.1. The Governor's Committee on Crime, Delinquency and Correction, upon the recommendation of the Law Enforcement Training Subcommittee, may suspend, revoke, or deny certification of a law enforcement officer:

"16.1.1 Who was convicted by any state or by the federal government of any crime the punishment for which could have been imprisonment in a federal or state prison or institution;

"16.1.2 Who was convicted of or pleaded guilty to or entered a plea of nolo contendere to any felony charge or to any violation of any federal or state laws or city ordinances, or to a sufficient number of misdemeanors to establish a pattern of disregard for the law;

"16.1.3 Who was found to have supplied or acquiesced in false information being supplied to the Committee, Subcommittee or hiring authority; or

"16.1.4 Who fail to participate in mandated in-service training required for rank."

For these reasons, we must conclude that the Governor's Committee had the authority to revoke the petitioner's law enforcement certification upon a finding that he procured it through fraud or misrepresentation. The circuit court erred in granting the writ of mandamus on the ground that such authority was lacking. The court was precluded from considering any other issues raised as to the certification revocation by the doctrine of exhaustion of administrative remedies.[13]

### III.

In summary, we conclude that the petitioner failed to demonstrate a clear legal right to reinstatement which would have justified the circuit court's issuance of the writ of mandamus in the proceedings below. The judgment of the Circuit Court of Mingo County is, therefore, reversed, and the writ of mandamus issued by such court is dissolved.

Reversed and remanded.

---

**13.** The circuit court also concluded that the writ of mandamus should issue because the Commission failed to conduct a hearing in the petitioner's civil service proceeding within ten days as required by W.Va.Code, 7–14–17(a), and that laches barred the Governor's Committee from revoking the petitioner's certification.